**STATE of Missouri ex rel. John LODWICK, Jr., Petitioner,**

v.

**Honorable Frank L. COTTEY, Special Judge, Circuit Ct. of Livingston County, Missouri, Respondent.**

No. KCD 26615.

Kansas City Court of Appeals, Missouri.

June 19, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 16, 1973.

Motion to Transfer from Court of Appeals Denied Sept. 10, 1973.

Robert G. Duncan, Duncan & Russell, Gladstone, Dick B. Dale, Richmond, for petitioner.

William S. Brandom, Clay County Prosecutor, Liberty, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Relator Lodwick seeks to prohibit the respondent, Judge Cottey, from proceeding to the trial of a criminal charge presently pending against Lodwick. This case presents a procedural tangle of byzantine complexity.

On March 9, 1966 a grand jury in Clay County, Missouri returned an indictment alleging that on April 8, 1961, Lodwick "being the duly elected and acting Judge of the Magistrate Court of the Eastern District of Clay County, Missouri, by virtue of his office did receive into his hands a certain check in the amount of $520.00 dated April 8, 1961, and made by Stanton Pearson to John Lodwick, Jr. in payment of a certain fine assessed against Harold Edward Pearson in a certain judgment rendered in the said Magistrate Court and the said John Lodwick, Jr. then and there willfully, unlawfully and feloniously did convert to his own use and did embezzle and negotiate said check and willfully, unlaw-

fully and feloniously did convert the said sum of $500.00 acquired thereby to his own use, the same being the property of the State of Missouri and the County of Clay, and thereby willfully, unlawfully and feloniously did embezzle, steal, take and carry away by deceit the said sum of $500.00, the property of said State and County, to his own use with intent to deprive the State and County of the use thereof * * *."

In May, 1966 that indictment, together with six other similar charges against Lodwick were transferred on change of venue to Livingston County. In the circuit court of the latter county various motions were filed and submitted to Judge Morgan. On November 14, 1966, Judge Morgan overruled all motions so submitted in all seven cases, ordered the defendant formally arraigned on each charge and ordered that one of the cases to be selected by the prosecuting attorney be set for trial at the earliest convenient date.

Unfortunately, from the viewpoint of prompt prosecution of this case, Judge Morgan very shortly after that order was appointed a member of the Kansas City Court of Appeals, and, of course, became disabled for that reason from proceeding to preside at the trial of this case. He was succeeded as circuit judge by Judge Kenneth R. Lewis, before whom additional motions were filed on behalf of Lodwick. Judge Lewis disqualified himself, and the Supreme Court transferred Judge Romjue as special judge to hear all seven cases.

In addition to the delays occasioned by those changes in judicial personnel, there was also additional delay arising from changes in counsel, both for the prosecution and defense, and continuances on the ground of counsel being members of the legislature, as well as from other causes such as illness. Evidentiary hearings on the motions were, however, finally concluded before Judge Romjue on November 10, 1971, and the cases were taken under advisement by the court, with leave to the parties to file briefs.

On September 18, 1972, Judge Romjue filed his written findings and order concerning those motions. In this twelve-page document, Judge Romjue summarized all of the procedural developments which had occurred to that date and discussed all of the various points which had been raised on behalf of the defendant. The only portion of the document which need be noted for present purposes is the section entitled "Sufficiency of the Indictments and Informations". In that section Judge Romjue interpreted each indictment as attempting to allege either the stealing of money without the consent of the owner, or the stealing of that money by deceit. Judge Romjue went on to say "the court believes as to each of the seven charges (1) each is insufficient to charge 'stealing by deceit' because there is no allegation that the victim relied upon any misrepresentation of the defendant. State v. Kesterson, *supra*, and (2) each is insufficient to charge stealing 'without the consent of the owner' under State v. White, *supra*, l.c. 185, 186." Judge Romjue then proceeded: "The State, may if it desires, amend the single information and substitute informations for the indictments and leave so to do is given under Rule 24.02 to be exercised by the State within forty days from the filing of this ruling". The document then concluded as follows:

"The motions of defendant are denied in each case; a copy hereof will be placed in the file of each case by the Circuit Clerk."

After the entry of that order Judge Romjue disqualified himself, and Judge Cottey was appointed by the Supreme Court as a substitute special judge on October 19, 1972. On that same date the State filed a substitute information for the indictment in this case, the substitute information alleging that Lodwick on April 8, 1961:

"by virtue of his office, came into possession of and negotiated a certain check in the amount and value of Five hundred

Twenty dollars ($520.00) given as payment of a certain fine and Court costs assessed against Harold Edward Pearson in a certain judgment rendered by said John Lodwick, Jr., said check being dated April 8, 1961, and bearing the signature of Stanton Pearson as maker thereof and being payable to John Lodwick, Jr., and out of the proceeds from the negotiation of said check said John Lodwick, Jr., did then and there willfully, unlawfully, and feloniously steal, take and carry away the amount of Five hundred dollars ($500.00), lawful currency of the United States of America, without the consent of the owners, the State of Missouri and the County of Clay * * * "

Following the filing of that substitute information, the defendant Lodwick on November 8, 1972, filed a motion to dismiss this new substitute information. This motion set forth various grounds, the most important one for present purposes being a claim that the order of Judge Romjue constituted a dismissal of the original indictment and that the longest possible period of limitation then expired before the State got around to filing the substitute information. Judge Cottey did not rule directly on any of the grounds set forth in Lodwick's motion, but instead on November 16, 1972, made a ruling on his own motion which undertook to solve the procedural problems. This order by Judge Cottey was as follows:

"Upon consideration of the issues presented Court of its own motion orders that the finding of Judge Romjue's memorandum herein, insofar as it purports to hold the original indictment herein to be insufficient, and insofar as it orders or authorizes the substitution therefor of an information herein, be, and the same hereby is, set aside and for naught held, (said memorandum having been filed herein on September 18, 1972), and that defendant's motion to quash or dismiss said indictment be overruled, and that the information hereto-

fore filed herein be dismissed, and that this cause be set for trial on the original indictment * * * "

In response to that order Lodwick then proceeded to file new motions on January 5, 1973, attacking the original indictment, asking that it be declared a nullity, that it be dismissed and quashed, and that the defendant be discharged. In answer to those motions, Judge Cottey again reviewed the entire proceeding and entered of record a six-page Order dated January 22, 1973. So far as pertinent here, Judge Cottey expounded his reasons for believing the original indictment was not defective and undertook to distinguish the White and Kesterson cases which had been relied upon by Judge Romjue. Judge Cottey proceeded to say:

"Accordingly, having thus disagreed with the principle and purport of Judge Romjue's ruling, I set it aside by my order of that date, and, in light of that ruling, reached the conclusion that the substitute information was unnecessary and should be dismissed."

Judge Cottey accordingly directed that all of the pending motions be denied and that the case be set for trial in regular course. Nevertheless, the situation had become so complex and unique that Judge Cottey himself urged that his ruling be tested by writ of prohibition in this Court.

Pursuant to that suggestion, Lodwick did file application in this Court for writ of prohibition on February 23, 1973. The State specifically elected not to resist issuance of a preliminary writ of prohibition, and this Court's preliminary writ did issue on March 13, 1972.

The contentions made by Lodwick in this Court can be summarized as follows: (1) that the three year statute of limitations applies and that period expired prior to the filing of any indictment or information; (2) that even if the five year statute of limitations applies, that period expired before the State filed its substitute informa-

tion; (3) that Judge Cottey had no authority to overrule Judge Romjue's order and to reinstate the original indictment which had been dismissed by Judge Romjue; (4) that the original indictment was insufficient to charge an offense; and (5) that the substitute information was improper and should be dismissed because it states a new and different offense from that of the original indictment.

## I

■ With respect to the problem of limitations, Lodwick correctly points out that if the general three year period of limitations for criminal prosecution under § 541.-200 [1] applies, then clearly that three years expired prior to the filing of any charge against him. Therefore, it is necessary for the State to bring this case within an exception to that general provision. The State on the other hand, correctly argues that such an exception does exist by reason of the proviso in § 541.200 which specifially permits as follows: "except indictment or informations for bribery or corruption in office may be prosecuted if found or filed within five years after the commission of the offense."

The conduct alleged in the indictment does come within the concept of "corruption in office" as used in that proviso. The facts here are within the intendment of that statutory phrase, as it is explained by State v. Douglass, 239 Mo. 674, 144 S. W. 407 (1912):

"Our criminal statutes do not specifically designate any crimes as 'corruption in office'. The nearest approach to such a designation is found in section 4411, prohibiting 'malicious oppression, partiality, misconduct or abuse of authority * * * under color of office,' and section 4412, entitled 'Fraud in Office'; but as a violation of those statutes only amounts to a misdemeanor, the General Assembly could not have had them in

mind in enacting the statute now under consideration, because it only purports to fix the limitations for the prosecution of felonies. 'Corruption includes bribery, but is more comprehensive, because an act may be corruptly done, though the advantage to be derived from it be not offered by another.' Bouvier's Law Dictionary. It is defined in 10 Cyc. p. 1168, as 'something against the law;' something forbidden by law; * * * an act done with intent to gain advantage, not consistent with official duty and the rights of others."

* * * * · * * *

"There are a great many felonies which may be committed by public officers besides bribery and embezzlement, to wit; Receiving benefits from the deposit of public funds (sections 4558 and 4559, R. S.1909); corruptly allowing and auditing claims (section 4560, R.S.1909); unlawful disbursement of public moneys (section 4561, R.S.1909); failing to pay over excess fees collected (section 4563, R.S. 1909). It would therefore have been well-nigh impossible for the General Assembly to have recited all these crimes in the statute of limitations, and in using the broad words 'corruption in office' they found a comprehensive phrase intended to cover every class of crimes which amounts to a felony when intentionally committed by a ministerial or judicial officer."

Lodwick makes an elaborate argument that the conduct alleged in the indictment could not have been done "by virtue of his office", because (among other related reasons suggested by him) a Magistrate has no statutory duty to collect fines. This argument was well answered by Judge Morgan in his Memorandum and Order dated November 14, 1966:

"Although it is true that the Sheriff and not defendant as Magistrate had the duty of collecting fines, defendant is charged with accepting money in pay-

1. All statutory references are to RSMo 1969, V.A.M.S.

ment of the same and converting it to his own use. Once a fine was assessed, and an individual citizen paid such amount to a public official acting, if not by virtue of his office at least under color or pretense thereof, the amount so received belonged to the State of Missouri. Particularly is this so in that it is common knowledge that many Magistrates in the State do collect fines."

The proviso to § 541.200 applies under the facts of this case, and the five year period of limitation controls rather than the three year period as contended for by Lodwick.

## II

■ Lodwick argues next that even conceding application of the five year period of limitations, nevertheless even that period has expired. In support, he makes two contentions. The first of these is that the original indictment was defective under the rules established by State v. Kesterson, 403 S.W.2d 606 (Mo.1966) and State v. White, 431 S.W.2d 182 (Mo.1968), and that the indictment should therefore be considered a nullity. This contention cannot be accepted. To accept that argument would be to vitiate § 541.230 which provides that when an indictment is quashed, set aside or reversed, the time during which it was pending shall not be computed as any part of the period of limitations. That section necessarily recognizes that an indictment, even though so defective as to require dismissal, is nevertheless effective at least for the purpose of tolling limitations. See also State v. Morris, 470 S.W.2d 467 (Mo.1971) and Johnson v. State, 485 S.W.2d 73 (Mo. 1972), more fully discussed under section V of this opinion.

■ The second contention made by Lodwick on this branch of the case is that Judge Romjue's order dated September 18, 1972 broke the suspension of limitations, that the period of limitations then began to run again, and that the five year period

fully expired prior to the filing of the substitute information. This argument of course, depends upon acceptance of the premise that Judge Romjue's order constituted a dismissal or quashing of the indictment. That premise is not supported by the record.

The twelve page document filed by Judge Romjue on September 18, 1972, consists of findings, a general discussion of the law, and an order. Of all this, the only portion that is legally binding and controlling is the decretal portion which is as follows: "The various other deficiencies asserted in defendant's motions have either been ruled above or are without merit requiring discussion *and are denied. The motions of defendants are denied in each case*; a copy hereof will be placed in the file of each case by the Circuit Clerk."

■ The law of this State, as well as elsewhere, is clear that the decretal portion of an order is controlling and cannot be changed or diminished by findings or a memorandum opinion, even though the latter be part of the same single document. A leading case on this subject is Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132 (Mo. banc 1952), where the court held:

"In 49 C.J.S. Judgments § 71, p. 189, the rule is stated: 'Mere recitals are not indispensable parts of judgments. The judgment or decree does not reside in its recitals, but in the mandatory or decretal portion thereof, which adjudicates and determines the issues in the case and defines and settles the rights and interests of the parties as far as they relate to the subject matter of the controversy. * * *' It has also been held that if there is an inconsistency between the recitals and the decretal part of a judgment, an express adjudication controls mere recitals. 49 C.J.S. Judgments § 437, p. 870; Lackender v. Morrison, 231 Iowa 899, 2 N.W.2d 286."

Holding similarly are State ex rel. Shartel v. Skinker, 324 Mo. 955, 25 S.W.2d 472, 1.

c. 478 (Mo. banc 1930; State ex rel. Anderson Motor Service Co. v. Public Service Commission, 348 Mo. 613, 154 S.W.2d 777 (1941); Donelson v. Board of Zoning Adjustment, 368 S.W.2d 728, l.c. 731 (Mo.App.1963); State v. Mattingly, 275 S.W.2d 34, l.c. 38 (Mo.App.1955); Ford v. Boyd, 298 S.W.2d 501, l.c. 507 (Mo.App.1957); Korn v. Ray, 434 S.W.2d 798, l.c. 804 (Mo.App.1968); 46 Am.Jur.2d, Judgments, § 78, p. 366 and § 4, p. 316.

For the reasons stated, the period of limitations has been suspended uninterruptedly since the initial filing of the original indictment in this case. It is therefore unnecessary to discuss the contention raised by the State that there was an independent suspension of limitations under § 541.220, by reason of Lodwick allegedly having become a nonresident of Missouri between September 12, 1972 and January, 1973.

### III

Lodwick argues next that Judge Cottey had no authority or jurisdiction to reinstate the original indictment, because Judge Romjue ruled that indictment insufficient and that ruling became final at the expiration of thirty days without appeal by the State. That argument is fallacious for the reasons stated at length in section II of this opinion. Judge Romjue did not "rule" the indictment insufficient. To the contrary, his order overruled defendant's motion which made that contention.[2]

However, there is a different reason why it must be held that Judge Cottey did not have authority to reinstate the indictment, although the consequences of so ruling are radically different from that which is urged by Lodwick. The reason that Judge Cottey acted beyond his jurisdiction in entering his order of November 16,

1972, is not because that order conflicted with any action of Judge Romjue, but rather, because Judge Cottey's order conflicted with the exclusive prerogatives of the prosecuting attorney.

The conflict mentioned, between the action taken by Judge Cottey and the course desired to be pursued by the prosecuting attorney, almost certainly occurred by inadvertence and misunderstanding. Judge Cottey plainly was of the impression that the prosecuting attorney at all times preferred, and still prefers, to go to trial on the allegations of the original indictment. This understanding by Judge Cottey is stated unmistakably in his Return to the Preliminary Writ of Prohibition, in which he explained his ruling of November 11, 1972, by saying that "he further held that the State was no longer bound by Judge Romjue's directive to amend the indictment by substitute information; that he released the State from its judicially imposed obligation to proceed to trial on the substitute information as previously required by Judge Romjue, thereby allowing restitution of the State's original pleading, the indictment * * *". By those statements in the return, Judge Cottey makes it crystal clear that he was of the impression that he was merely permitting the prosecutor to do that which he wanted to do and which he had heretofore been prevented from doing by Judge Romjue.

It now appears, however, that the prosecutor does not, in fact, desire to proceed on the original indictment. In the course of oral argument before this court, a direct question was put to the attorney for the State as to whether the prosecutor's office would proceed to trial on the original indictment if the writ of prohibition were to be quashed. The State's attorney answered that his office would not do so—that in-

2. The voluntary filing of a substitute information by the prosecuting attorney did not constitute an "abandonment" of the original indictment having the effect contended for by Lodwick of absolutely preventing reinstatement of the indictment. The filing of the substitute information had the effect only of suspending the indictment. State v. Thompson, 392 S.W.2d 617, 622 (Mo.1965).

stead, the prosecutor would ask leave of court to file a new substitute information which would be identical or very much like the substitute information which had been ordered dismissed by Judge Cottey.

■ Thus, Judge Cottey is now in the position of attempting to force his views of how to proceed in the handling of this case upon the prosecutor, even though the prosecutor has a distinctly different preference of how he wants to present the State's case. This stance, no matter how unintentional, places Judge Cottey in opposition to the well-established legal principle that it is within the sole discretion of the-prosecuting attorney concerning against whom, when and how the criminal laws are to be enforced. This rule is authoritatively stated in State ex rel. Dowd v. Nangle, 365 Mo. 134, 276 S.W.2d 135, 1.c. 137 (Mo. banc 1955) as follows:

"In what office has the law lodged the duty and responsibility for the commencement of prosecution of a criminal offense and carrying the same forward to its conclusion? Unquestionably such is the responsibility of the circuit attorney or prosecuting attorney. § 54.450 provides that the circuit attorney shall 'manage and conduct all criminal cases, * * * of which the circuit court * * * shall have jurisdiction * * *.'

*　　*　　*　　*　　*　　*

"And in State ex rel. Griffin v. Smith, 363 Mo. 1235, 1239, 258 S.W.2d 590, 593, we discussed the dignity and importance of the office of prosecutor and recognized that he, like every other attorney at law, is an officer of the court, nevertheless 'he is not a mere lackey of the court nor are his conclusions in the discharge of his official duties and responsibilities, in anywise subservient to the views of the judge as to the handling of the State's cases. * * *' "

The same rule was stated more recently in State v. Smith, 422 S.W.2d 50, 1.c. 66 (Mo. banc 1967) as follows:

"In the exercise of his discretion a prosecuting attorney has the right to choose a course of action or nonaction, as long as he does not act wilfully or in bad faith. 'That discretion may, in good faith (but not arbitrarily), be exercised with respect to when, how and against whom to initiate criminal proceedings.' State on Inf. McKittrick v. Wallach, 353 Mo. 312, 182 S.W.2d 313, 319, 155 A.L. R. 1."

■ This same rule is reflected in the frequently stated principle that the prosecuting attorney has the sole and exclusive discretion concerning whether or not to enter a nolle prosequi. State ex inf. Dalton v. Moody, 325 S.W.2d 21, 1.c. 32 (Mo. banc 1959); State v. Berry, 298 S.W.2d 429, 1.c. 430 (Mo.1957); State v. Montgomery, 276 S.W.2d 166, 1.c. 167 (Mo. 1955); 22A C.J.S. Criminal Law.

■ The prosecuting attorney in this case voluntarily filed a substitute information by way of amendment for the original indictment, and he desires to go to trial on that substitute information or one substantially similar to it. He has that right, and the trial judge has no legal authority to substitute his judgment as to this matter of trial strategy.

IV

■ Of the various points made by Lodwick, the one which is probably urged most forcibly before this court is that the original indictment was and is insufficient under the Kesterson and White cases. There is much to be said for Judge Cottey's interpretation of those two cases and the basis on which he distinguishes them from the present case. However, it is unnecessary to decide the conflict between the views of

Judges Romjue and Cottey on this matter, nor to consider the many other attacks upon the original indictment levied by Lodwick, since for the reasons set forth in section III of this opinion, the case will not be tried upon the original indictment. The prosecutor desires to proceed by way of substitute information, and he has the right to do so. Therefore, questions as to the sufficiency of the original indictment now become immaterial.

## V

Lodwick's final contention is that the substitute information is invalid. At oral argument before this court, defense counsel admitted upon inquiry that the substitute information would have been perfectly good and not subject to attack if it had been filed as the original pleading on March 9, 1966, instead of the indictment which was filed on that date. Defense counsel further admitted in answer to questions that the sole objection now being made to the substitute indictment (other than questions of limitation which have already been discussed) is that the substitute information constitutes an additional and different charge from that of the original indictment, in violation of Rule 24.02, V.A. M.R.

█ The principal argument made in behalf of this contention is that the substitute indictment is necessarily "additional and different", because the original indictment stated no offense and must therefore be considered as a pure nullity. Even assuming the original indictment to have been defective, nevertheless the present argument is untenable and has been specifically rejected by the Missouri Supreme Court in State v. Morris, 470 S.W.2d 467, 468 (Mo.1971) and Johnson v. State, 485 S.W.2d 73, 75 (Mo.1972). In those cases the original informations each omitted essential elements and were therefore fatally defective. Nevertheless, the Supreme Court held that the informations were sub-

ject to being amended so as to include the missing element, and the statement of a new offense was not thereby occasioned. With respect to this point, the Morris opinion holds as follows:

> "The state, by adding the allegation that defendant did not have sufficient credit with the bank for payment of a check (and that the check was for sixteen head of cattle) did not charge defendant with a different or additional offense than that with which he originally was charged. It sought merely to sufficiently charge that offense. This was expressly authorized in the Starks case and by Supreme Court Rule 24.02. The action of the court in permitting the filing of the amended information was not error."

A comparison of the substitute information with the original indictment does not disclose the introduction of anything really new or different. The offense charged is the same in both, that being stealing under § 560.156. "Stealing" under this statute may be accomplished in either of two ways: by taking without consent of the owner, or by taking pursuant to a consent which was secured by deceit. In the original indictment, as correctly stated by Judge Romjue in his memorandum opinion, the State attempted to allege both of these methods. The real significance of the substitute information is that the State has now and by means of this substitution, made a choice between the two methods of accomplishing the crime, and had chosen to proceed on the theory of taking without consent of the owner.

█ A comparison of the allegations of the two pleadings shows plainly that the State is counting upon the same transaction, with the change being directed only to pleading a different legal conclusion and effect. Both pleadings relate to the same date of April 8, 1961; they both relate to a check in the amount of $520.20; they both

relate to a payment by Stanton Pearson to Lodwick in payment of a fine assessed against Harold Edward Pearson by Lodwick; and they both relate to Lodwick personally taking and keeping for his own use $500.00 out of that $520.20 check. With these common elements, it is impossible that Lodwick could or can be confused as to any change in the nature of the charge against him, nor can it be perceived in what other way he could possibly be unfairly prejudiced.

## VI

On the basis of the foregoing, it is clear that Lodwick is not entitled to the relief sought by him on this writ of prohibition. On the other hand, the case should not go forward to trial on the original indictment, as ordered by Judge Cottey, in contradiction to the desires of the method by which the prosecuting attorney desires to proceed.

Rule 97.05 provides that in the hearing of prohibition matters, the court "may [award and] enforce full relief, comformable to the principles of law heretofore governing the remedy by prohibition". This court may render final judgment on the merits as the facts may warrant. State ex rel. Travelers Indemnity Co. v. Swink, 440 S.W.2d 152 (Mo.App.1969). The order of this Court may direct the trial court to take future action as may be necessary to meet the demands of equity and justice, without being completely circumscribed by the scope of the petition. Se-Ma-No Electric Cooperative v. City of Mansfield, 321 S.W.2d 723, 730 (Mo.App.1958).

Pursuant to the above authority, respondent is directed to vacate the order of November 16, 1972, and to proceed to trial on the substitute information (or such other substitute information as may be offered and accepted by the court) as promptly as possible.

All concur.