**STATE of Iowa, Appellee,**

v.

**Kim Virgil LeMATTY, Appellant.**

No. 60278.

Court of Appeals of Iowa.

Dec. 28, 1977.

Application for Further Review Denied by Supreme Court on Feb. 17, 1978.

---

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen. and James P. Hoffman, Lee County Atty., for appellee.

Gordon M. Liles, Fort Madison, for appellant.

Submitted to ALLBEE, C. J., and DONIELSON, SNELL, OXBERGER and CARTER, JJ.

PER CURIAM.

■ Defendant appeals from judgment of conviction for the offense of second degree murder and resulting sentence. He argues four assignments of error which we consider separately.

**I. Refusal of trial court to accept plea bargain.** Defendant contends that the trial court erred by refusing to accept a plea bargain whereby the State and defendant both proposed a plea of guilty to the offenses of manslaughter and larceny of property of a value more than $20, with no recommendation to be made by the State as to sentence. At the time this plea arrangement was proposed to the trial court, defendant was facing trial on a charge of murder. There was no larceny charge pending although apparently one was contemplated.

Defendant argues that the power to control the charges upon which a defendant is prosecuted should lie with the prosecutor and not the courts. He urges that the court should not refuse to accept a plea bargain unless an abuse of prosecutorial discretion appears. As authority for this contention defendant relies upon the cases of *People v. Matulonis*, 60 Mich.App. 143, 230 N.W.2d 347 (1975); *People v. Curtis*, 389 Mich. 698, 209 N.W.2d 243 (1973); and *United States v. Ammidown*, 162 U.S.App.D.C. 28, 497 F.2d 615 (1973).

The precise issue has not been decided by the supreme court of Iowa, but that court has recently stated, "A crime is an offense against the public and a prosecution may be terminated only by public officers in accordance with established procedures." *State v. Swallom*, 244 N.W.2d 321 (Iowa 1976). It is clear that the legal effect of a plea of guilty to the lesser offense of manslaughter, as proposed in the present case, would have constituted a dismissal of the greater charge of murder. Section 795.5, The Code, provides:

> The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner.

In Dunahoo, Judicial Discretion, 58 Iowa L.Rev., 1023, 1040 (1973), the author states that this statutory provision "contrasts with that in some jurisdictions in which the prosecutor may dismiss the proceeding on his own initiative." We believe that on the record presented in this case the trial court acted within its statutory authority in declining to accept the proffered plea bargain. Section 3.3(c) of the A.B.A. Standards Relating to Guilty Pleas provides:

> When a plea of guilty . . . is tendered or received as a result of a prior plea agreement, the trial judge should give the agreement due consideration, but notwithstanding its existence he should reach an independent decision on

whether to grant charge or sentence concessions.

Section 1.8 of these standards lists several considerations which are appropriate in making such a decision. In the application of the same or similar considerations to the record made at the time of the proffered plea bargain we do not find that the trial court abused its discretion in declining to accept it.

■ As an alternative argument relating to the plea bargain, the defendant urges that the trial court was unfair in indicating, during discussion of a possible guilty plea to second degree murder, that a 30 year sentence would be the maximum and then imposing a 35 year sentence after defendant stood trial. As to this contention we note that there never was any formalized plea bargain proffered to the court concerning a guilty plea to second degree murder. In some general discussion of this possibility the trial court stated:

I think I told you I would be, **perhaps,** prepared to come from forty by way of assurance down to **maybe** thirty years as being the very maximum, **and I am not telling you that is what I will give this man.** I **may** give him twenty, but I would not give him less—. (emphasis added)

Under the circumstances presented, we do not believe the trial court had committed itself to impose no more than a 30 year sentence upon the event of defendant's conviction by plea of guilty or otherwise.

■ **II. Defendant's motion for change of venue.** Defendant's motion for change of venue asserted that (a) local news media portrayed the events leading to the charge against defendant in such a manner as to engender local prejudice; and (b) that there was pending in the same county a civil suit against the county department of social services for negligence in the death of the victim allegedly murdered by defendant, thus giving the jurors a pecuniary interest in the outcome of the trial. The trial court overruled the motion on both grounds.

The news publicity upon which defendant relied in support of his motion was a single article and accompanying photographs published in the Fort Madison Evening Democrat on March 10, 1976. The alleged murder took place on March 5, 1976. The trial did not commence until October 18, 1976. We have reviewed this article and agree with the trial court's finding that it contains nothing inflammatory and is not calculated to cause prejudice in the community against the defendant. We believe that defendant failed to demonstrate that there was a reasonable likelihood that he would be unable to receive a fair trial in the county as a result of this publicity. There appears to have been little difficulty picking a jury which exhibited little knowledge of and no excitement or prejudice about the case. The motion was properly overruled on this ground. *See State v. Dague,* 206 N.W.2d 93 (Iowa 1973); *State v. Niccum,* 190 N.W.2d 815 (Iowa 1971).

We also conclude that the pendency of the civil suit against the county was not shown to have caused the jurors such an interest in the proceedings as to prejudice their judgment adversely to defendant. The trial court did not err in refusing to change venue.

■ **III. Failure to permit individual voir dire of prospective jurors.** In the trial court defendant requested and was denied an opportunity to question the prospective jurors individually, out of the presence of other prospective jurors. In *State v. Albers,* 174 N.W.2d 649, 652 (Iowa 1970), the court recognized merit in the proposition "that under some circumstances each juror should be examined out of the presence of the other jurors," but also stated that this was not ordinary procedure.

To be entitled to a reversal on this point we believe that defendant must point to some areas of prejudice resulting from the collective voir dire examination of the jury. One prospective juror when questioned indicated some knowledge of the pending civil suit against the county department of social services. Nine other prospective jurors, when questioned, indicated some inability on their part to be impartial. None of

these persons stated any facts relating directly to the defendant's involvement in the case. We are not convinced from the record presented that any of these comments sufficiently influenced the capacity of the other juror's for remaining unbiased so as to deny defendant an impartial jury. *See State v. Dalgliesh*, 223 N.W.2d 627 (Iowa 1974). We hold there was no reversible error because of failure to permit individual voir dire examination of the jurors.

**IV. Motion for mistrial based on evidence that victim's mother took a polygraph examination.** Prior to trial, the trial court sustained defendant's motion in limine concerning the State offering evidence that the victim's mother was given a polygraph examination. In spite of this ruling, a State's witness, in response to a general question not related to polygraph examinations, volunteered the fact that the police contemplated giving the victim's mother a polygraph examination. Later the assistant county attorney specifically asked the same witness a question about the victim's mother taking the polygraph examination. He then withdrew this question before the witness answered but the witness answered anyway stating that the victim's mother "was going to take the polygraph." The trial court struck this evidence from the record and admonished the jury to disregard it. Defendant moved for a mistrial on the grounds that the evidence was inadmissible and prejudicial.

We agree with the defendant's contention that the evidence was improper. After the trial court's ruling on the motion in limine, the State should have instructed its witnesses to avoid this subject matter in their testimony and it was improper for the assistant county attorney to inquire further into the matter after the witness volunteered the information initially. But, we believe that the striking of the alleged improper testimony and subsequent admonition to the jury were sufficient to assure a fair trial. As stated in *State v. Peterson*, 189 N.W.2d 891, 896 (Iowa 1971):

> A reversal must be predicated upon the proposition that the (objectionable testimony) forbidden by the ruling on the motion in limine, was so prejudicial, its effect upon the jury could not be erased by this procedure and defendant was denied a fair trial. Ordinarily the striking of improper testimony cures any error. *State v. Carey* (Iowa 1969), 165 N.W.2d 27, 32. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a reversal.

We apply this rule in the present case and affirm defendant's conviction.

AFFIRMED.