[No. 47354-4. En Banc. July 23, 1981.]

THE STATE OF WASHINGTON, *Petitioner,* v. GREGORY D. HANER, *Petitioner,* SUPERIOR COURT FOR GRAYS HARBOR COUNTY, *Respondent.*

*Farra & Godfrey,* by *Gordon L. Godfrey,* for petitioner Haner.

*Curtis M. Janhunen, Prosecuting Attorney,* and *Michael Gary Spencer, Deputy,* for petitioner State.

*Kenneth O. Eikenberry, Attorney General,* and *Kevin Ryan, Assistant,* for respondent.

WILLIAMS, J.—Petitioners Gregory D. Haner and the State of Washington seek review of the Grays Harbor County Superior Court's denial of a motion to file an amended information. Pursuant to a plea bargain, the prosecuting attorney had sought to reduce a charge by amending the original information.

The essentially undisputed facts are as follows: Defendant Haner, who was on probation for the felony offense of possession of amphetamines, and a friend had spent a day drinking beer and whiskey. In the evening they drove to an area outside Aberdeen, Washington, and came upon a group of people. Haner, who was the driver of the vehicle, fired six shots from a .45 caliber pistol. After continuing up the road for a distance, Haner turned back and again approached the group. A heated argument ensued. Someone apparently saw the gun lying on the seat of the car and made a move to seize it. Haner grabbed it first, pointed it toward the victim, and fired. The victim was not seriously injured, though a glancing blow from the bullet caused scalp bleeding and severed some hair from his head.

Haner was charged with assault in the second degree. The information also included an allegation that at the time of the commission of the offense he was armed with a

deadly weapon under RCW 9.95.040, which was also a firearm under RCW 9.41.025.

Four days before trial, the State moved to file an amended information. This motion was part of a plea bargain agreement which included the following terms: (1) the charge against Haner would be reduced from second degree assault to third degree assault, and (2) the deadly weapon allegations would be stricken. The parties told the court they presumed Haner's probation would be revoked, and in that event the prosecutor agreed to recommend that the sentences resulting from the revocation and from the third degree assault charge would run concurrently. Haner told the court he wished to plead guilty to the amended information as part of the plea bargain arrangement.

It was Haner's contention that the shooting was accidental, and defense counsel told the judge he "had a good chance to defeat the Second Degree Assault" charge. The prosecuting attorney conceded the case for second degree assault was a hard one, which presented some difficulties of proof. He felt, however, that the facts of the case clearly fell within the charge of third degree assault and in view of the difficulties with proof of the original charge, he argued the plea bargain was appropriate and justified. Since a conviction on the second degree assault charge would carry a maximum term of 10 years and a mandatory minimum of 7½ years, Haner and his counsel concluded that it was in Haner's best interest to avoid a risk of conviction on the second degree assault charge and to plead guilty to the reduced charge without the deadly weapon allegation.

Stating that he had a duty to "approve or disapprove plea bargains and to the filing of amended charges", the judge denied the motion to amend the information. Although he did not clearly state his reasons, it appears the judge felt under the facts of the case and Haner's prior record that Haner ought either to be convicted of second degree assault with the accompanying longer sentence or to be acquitted. He also disapproved the proposed striking of the weapons charge, conviction of which in Haner's case

would carry a 7½-year mandatory minimum sentence. RCW 9A.36.020; 9A.36.030; 9A.20.020(1)(b), (c); 9.95.040(2). The judge explained:

> [T]here are indications in the record, whether they're provable or not, that the defendant was on probation for a felony, and there are indications that he intentionally shot at someone and that he hit someone.
>
> Now, I am fully aware that this puts him in a position of looking at a potential seven year [sic] minimum term. If someone is on probation for a felony and while on probation for a felony shoots somebody on purpose, I'm not so sure but what they shouldn't serve seven years. So that part doesn't really move me too much.
>
> . . .
> . . . I'm just saying that anyone who pled guilty to a felony committed while he is on probation for a felony is certainly—whoever the judge is, he's got to consider sending that person to prison.
>
> . . .
> . . . So, on the one hand if I have a person who intentionally shot somebody while he was on probation he ought to be punished, in my opinion, and on the other hand if he didn't mean to shoot anybody and it was all an accident, then he shouldn't go to prison. I don't know about this in between.

Haner moved for discretionary review of the denial of the motion to amend, and the Court of Appeals entered an order (1) granting the motion and (2) certifying the case to this court pursuant to RCW 2.06.030 and RAP 4.2. Since the State agreed with Haner that the judge had abused his discretion, the parties are designated joint petitioners to this court and the trial court is the respondent.

The only issue is whether the trial court abused its discretion when it refused to allow the State to file an amended information charging a crime to which Haner had agreed to plead guilty pursuant to a plea bargain. It is a question of first impression in this state.

Petitioners do not deny that the judge has the clear discretionary authority to refuse to accept a plea bargain under CrR 4.2(e), which provides:

**(e) Agreements.** If a plea of guilty is based upon an agreement between the defendant and the prosecuting attorney, such agreement must be made a part of the record at the time the plea is entered. *No agreement shall be made which specifies what action the judge shall take on or pursuant to the plea or which attempts to control the exercise of his discretion, and the court shall so advise the defendant.*

(Italics ours.)

CrR 4.2(e) was adopted by this court effective July 1, 1973. Prior to adoption of the Superior Court Criminal Rules on that date, the Judicial Council submitted to this court a report prepared by the Criminal Rules Task Force. *See* Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* (West Pub. Co. ed. 1971). The comment to CrR 4.2(e) states, in part, at page 49:

This rule is similar to ABA proposals (ABA, Project, Standards Relating to Pleas of Guilty (Approved Draft 1968) . . . § 3.3(b)) except that the instant rule envisions no statement of commitment, however tentative, by the judge.

. . . It was the *intent of the Task Force that no plea bargaining agreement should constrict the court's discretion.*

(Italics ours.)

Courts in other jurisdictions have likewise upheld trial court refusals to accept plea agreements in circumstances where serious crimes were involved. *See, e.g., State v. LeMatty,* 263 N.W.2d 559, 561–62 (Iowa App. 1977); *State v. Stewart,* 197 Neb. 497, 250 N.W.2d 849 (1977); *People v. Ferguson,* 46 Ill. App. 3d 732, 361 N.E.2d 333 (1977); and *Akron v. Ragsdale,* 61 Ohio App. 2d 107, 399 N.E.2d 119 (1978).

Petitioners maintain, however, that this is not fundamentally a plea bargain case under CrR 4.2(e). Rather, they claim that the gravamen of the issue is the collision between the parties' desire and the prosecutor's power to amend the information on the one hand, and the trial judge's arbitrary refusal to allow such amendment on the

other. Broadly stated, it is urged that the charging function is a prosecutorial one, that amendment of the information under CrR 2.1(d) is part of the charging function, and that the court abused its discretion by invading this province. Although they concede that CrR 2.1(d) by its terms gives some role to the trial court in the process of amending an information, they contend that the trial judge may refuse to grant a motion to amend only in two narrow situations: (1) when the rights of the defendant would be prejudiced by the amendment, and (2) when the justification for the amendment does not relate to the prosecutorial function. We disagree.

CrR 2.1(d) provides:

> **(d) Amendment of Information.** The court may permit any information to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced.

Clearly, the prosecuting attorney is vested with the power to "[p]rosecute all criminal and civil actions in which the state or his county may be a party . . .", RCW 36.27-.020(4). Moreover, there is no role for the court at the time the prosecuting attorney files the original charge:

> **(a) Use of Indictment or Information.** The *initial* pleading by the state shall be an indictment or an information in all criminal proceedings filed by the prosecuting attorney.

(Italics ours.) CrR 2.1(a).

The amendment of an information is *not* an initial decision to prosecute, however. *See State ex rel. Schillberg v. Cascade District Court,* 94 Wn.2d 772, 778, 621 P.2d 115 (1980); *People v. Superior Court,* 11 Cal. 3d 59, 65, 520 P.2d 405, 113 Cal. Rptr. 21 (1974). By the time the State has determined to move to amend the information, the plain terms of CrR 2.1(d) have implicated the court in any possible alterations. *People v. Superior Court, supra.*

When a defendant enters into a plea bargain agreement, it is virtually always for the purpose of reducing the time he potentially may have to serve in confinement or of free-

ing the judge from statutory restraints which prohibit the granting of probation. This is accomplished when the prosecutor moves to either dismiss or reduce some or all of the charges. Thus, the reducing or dismissal of charges is an integral and major element of the bargain. To characterize it solely as a charging function of the prosecutor and not as part of the plea bargain is unrealistic and as a practical matter strips the judge of his authority to approve or disapprove the plea bargain, a role all parties agree he has.

Granting of probation, establishing conditions of probation, ordering that sentences run concurrently, recommendations to the parole board, amount of fine, terms of restitution, etc., fall within the judge's sentencing powers whether they are elements of a plea bargain agreement or not. *See, e.g.,* RCW 9.95.010; 9.95.030; 9.95.200. Thus, to have any meaning beyond its ordinary sentencing powers, the court's authority to approve or deny a plea bargain must include the right to refuse or allow the dismissal or amendment of the charges.

It follows, then, that the only remaining question is whether the trial judge abused his discretion in refusing to grant the State's motion to amend the information.[1]

In this case, it was admitted that Haner had a prior fel-

---

[1]The question of judicial discretion to grant or deny a motion to reduce a charge reached as part of a plea agreement has received legislative attention in the 1981 legislative session. Effective July 1, 1984, the following new sections of Second Substitute House Bill 440, 47th Legislature (1981), will become effective:

NEW SECTION. Sec. 8. The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea to a *charged* offense or to a *lesser* or *related* offense, the prosecutor will do any of the following:

(1) Move for dismissal of other charges or counts;

(2) Recommend a particular sentence within the sentence range applicable to the offense or offenses to which the offender pled guilty;

(3) Recommend a particular sentence outside of the sentence range;

(4) *Agree to file a particular charge or count;*

(5) Agree not to file other charges or counts; or

(6) Make any other promise to the defendant, except that in no instance may the prosecutor agree not to allege prior convictions.

The court shall not participate in any discussions under this section.

ony conviction and that one of the conditions of his probation was that he not carry a gun. By his own admission, he had consumed a large quantity of intoxicating beverages on the day of the incident. Moreover, the parties agree that he did point his gun at the victim and fired it. Fortuitously, the victim suffered only a slight wound. Under these circumstances, we cannot say that the judge abused his discretion in concluding that the public interest would not be served by reduction of the charge and dropping of the deadly weapon allegation.[2]

Accordingly, we affirm the trial court's order denying the State's motion to amend the information.

ROSELLINI, STAFFORD, HICKS, and DORE, JJ., concur.

DOLLIVER, J. (concurring)—While I concur with the reasoning and result of the majority, I believe it is both unnecessary and inappropriate to discuss Substitute House Bill 440, 47th Legislature (1981). This legislation was neither argued before the court nor is reference to it essential

---

NEW SECTION. Sec. 9. (1) If a plea agreement has been reached by the prosecutor and the defendant pursuant to section 8 of this act, they shall at the time of the defendant's plea state to the court, on the record, the nature of the agreement and the reasons for the agreement. *The court, at the time of the plea, shall determine if the agreement is consistent with the interests of justice and with the prosecuting standards. If the court determines it is not consistent with the interests of justice and with the prosecuting standards, the court shall order that neither the defendant nor the prosecutor is bound by the agreement and that the defendant may withdraw the defendant's plea of guilty if one has been made and enter a plea of not guilty.*
(Italics ours.) Thus, the legislature has determined that, once the law becomes operative, the prosecutor's agreement to reduce a charge as part of a plea bargain is subject to the court's acceptance in "the interests of justice". Second Substitute House Bill 440, § 9(1), 47th Legislature (1981).

[2]This is not to say the judge was without alternatives in exercising his discretion in this fashion. Had he granted the motion to amend, the court could have recommended to the parole board that Haner be sentenced to the full 5 years without parole. Moreover, he could have suggested revocation of Haner's probation, imposing sentence on the first offense to run consecutively. Such a sentence could have run longer than the 7½–year mandatory minimum, if good time credits were applied to the minimum. RCW 9.95.080; 9.95.110.

to the reasoning of the majority. Furthermore, it may well be that it is yet another attempt by the legislature to interfere improperly and unconstitutionally with the independence of the judiciary and will be reviewed on this ground on another occasion.

UTTER, J. (dissenting)—The majority, by characterizing this case as one involving only a judicial interest, incorrectly resolves the delicate separation of powers problem presented. That doctrine, when implicated, is to be applied in a manner that guarantees a system of checks and balances which furthers rather than impairs cooperative action among governmental entities. *United States v. Nixon,* 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974); *United States v. Cowan,* 524 F.2d 504 (5th Cir. 1975); *State v. Leonardis,* 73 N.J. 360, 375 A.2d 607 (1977). The majority's application of that doctrine is too rigid and essentially ignores that, as in this case, there is often an overlapping of judicial and executive functions; an overlapping which requires a balancing approach.

Whenever, as here, the prosecution attempts to amend an information to a lesser included offense and to drop other charges pursuant to an incipient plea bargain, there arises a conflict between the judicial and executive branches. Comment, *Judicial Discretion To Reject Negotiated Pleas,* 63 Geo. L.J. 241, 252 (1974); *United States v. Ammidown,* 497 F.2d 615 (D.C. Cir. 1973); *People v. Matulonis,* 60 Mich. App. 143, 230 N.W.2d 347 (1975). The prosecutor is seeking to influence the sentencing options available to the court. *Id.* Conversely, the trial judge, if he or she refuses the amendment, encroaches upon the executive's inherent power to prosecute or dismiss charges. *Id.*

The majority acknowledges this conflict, but concludes that the judicial interest is superior and then, by analyzing the problem solely in light of that interest, unnecessarily denigrates the executive function. In contrast, several courts have applied a test which not only accommodates both interests, but is consistent with the separation of

powers doctrine. *Ammidown, supra; Matulonis, supra; State v. Pruett,* 213 Kan. 41, 515 P.2d 1051 (1973); *see also State ex rel. Lodwick v. Cottey,* 497 S.W.2d 873 (Mo. Ct. App. 1973). Those courts have analyzed the problem of this case as primarily involving prosecutorial discretion, and I think properly so.

In *Pruett,* the Kansas Supreme Court interpreted a statute substantially similar to CrR 2.1(d). That statute provides:

"K.S.A. 1971 Supp. 22-3201 (4). The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

*State v. Pruett, supra* at 46.

The court concluded, in light of the separation of powers doctrine, that the judge's role is only to ensure that the proposed amendment does not prejudice the defendant's rights. It held

that when the prosecutor exercises his discretion as to the charges to be filed or as to amendments of the information seeking to reduce the charges to lesser offenses, the trial judge has no right to substitute his judgment for that of the prosecutor absent some compelling reason to protect the rights of the defendant.

*Pruett,* at 47. In so holding, the court noted:

The public interest is best served and even-handed justice best dispensed not by a mechanical application of the 'letter of the law' but by a flexible and individualized application of its norms through the exercise of the trained discretion of the prosecutor as an administrator of justice."

*Pruett,* at 47, citing 1 American Bar Ass'n, *Standards for Criminal Justice,* Std. 3–3.9, Commentary at 3.56 (2d ed. 1980).

In *Ammidown,* that deference to prosecutorial discretion was not only acknowledged, but expanded. The court stated that prosecutorial determinations are presumptively valid and that they, even in the context of plea bargaining,

should be honored absent an abuse of prosecutorial discretion. According to that court, trial judges cannot deny proposed amendments simply because their conception of the public's interest differs from that of the prosecution. Given the prosecutorial charging role, the court ruled that proposed amendments can be condemned "as a trespass on judicial authority only in a blatant and extreme case." *Ammidown,* at 622. Relevant to this case, the court noted:

> When we come to the possible ground of intrusion on the sentencing function of the trial judge, we have a consideration that is interdependent of the other. That is to say, a dropping of an offense that might be taken as an intrusion on the judicial function if it were not shown to be related to a prosecutorial purpose takes on an entirely different coloration if it is explained to the judge that there was a prosecutorial purpose, an insufficiency of evidence, a doubt as to the admissibility of certain evidence under exclusionary rules, a need for evidence to bring another felon to justice, or other similar consideration.

*Ammidown,* at 623.

Based on the above reasoning, *Ammidown* suggests that amendments may be judicially rejected only when required either by fairness to the defendant or the prosecutor, or when the court's sentencing authority is substantially undermined. This balancing test, though not uniformly accepted,[3] has been followed elsewhere and does represent an attempt to accommodate, consistent with the separation of powers doctrine, the overlapping judicial and executive functions. *Matulonis, supra; see generally* 1 C. Wright, *Federal Practice and Procedure* § 128 (1969).

In this case, the first two *Ammidown* factors are not present. No one alleges that the proposed amendment would prejudice either the defendant or the prosecutor. Instead, both argue for its acceptance.

Nor is this a case where there is any allegation of prosecutorial abuse. The prosecutor, after exercising his assigned

---

[3]*See United States v. Bean,* 564 F.2d 700 (5th Cir. 1977); *United States v. Moore,* 637 F.2d 1194 (8th Cir. 1981).

duties, concluded in good faith that insufficient evidence existed to prove second degree assault. That conclusion has a factual predicate and thus ought to be honored, absent a flagrant intrusion on judicial sentencing authority. *See Ammidown, supra; United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n,* 228 F. Supp. 483, 486–87 (S.D.N.Y. 1964).

Only the third *Ammidown* factor has significance in this case. The proffered amendment was apparently rejected because the trial judge felt it unduly limited his sentencing options. The original charge of second degree assault with a weapon carries from a mandatory 7½ to a maximum 10–year sentence. Contrastingly, the amended charge of third degree assault carries a maximum term of 5 years.

On greater sentencing disparities, trial courts have been reversed for refusing to accept proposed amendments. *Ammidown, supra; Matulonis, supra.* In *Ammidown,* the defendant appealed his first degree murder conviction on the ground that the trial court abused its discretion in refusing a plea to second degree murder. In reversing the trial court, the appellate court concluded that the sentence disparity between first and second degree murder is not "so blatant as to constitute as [*sic*] intrusion upon the judicial domain." *Ammidown,* at 623. It reasoned:

> The life sentence is mandatory on a conviction for first degree murder, and discretionary with the court on a conviction for murder in the second degree. Parole is available after a minimum of 20 years in the case of first degree murder, and after a minimum of 15 years in the case of murder in the second degree. The difference is insufficient by itself to warrant judicial rejection of a properly bargained plea of guilty to murder in the second degree on the ground of undue interference with the sentencing domain of the judiciary.

*Ammidown,* at 623.

A similar conclusion was reached in *Matulonis.* There, the sentencing disparity between the proposed amendment and the initial charge was the difference between a maximum term of 2 years and one of 10. In reversing the trial

court's refusal to accept the proffered amendment, the appellate court stated that the disparity lacked the egregiousness necessary for its rejection.

Both of these cases present a disparity greater than that in this case. In this case, the sentencing disparity was quite minimal. The majority acknowledges this when it states:

> This is not to say the judge was without alternatives in exercising his discretion in this fashion. Had he granted the motion to amend, the court could have recommended to the parole board that Haner be sentenced to the full 5 years without parole. Moreover, he could have suggested revocation of Haner's probation, imposing sentence on the first offense to run consecutively. Such a sentence could have run longer than the 7½–year mandatory minimum, if good time credits were applied to the minimum. RCW 9.95.080; 9.95.110.

Majority opinion, at 865 n.2.

I therefore must conclude that the trial court improperly refused the amendment. The amendment would not have substantially undermined sentencing authority; whereas its rejection did significantly weaken the prosecutorial discretion we, as the public, have delegated to our public attorneys. If the prosecutor has not acted wisely, he or she will be accountable to the electorate. It is not proper for the judicial branch to question the wisdom of his or her action, based on the facts of this case.

For these reasons, I dissent.

BRACHTENBACH, C.J., and DIMMICK, J., concur with UTTER, J.

Reconsideration denied October 5, 1981.