IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35792-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DAHNDRE KAVAUGN WESTWOOD, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Dahndre Westwood was charged with several felony offenses related to a sexual assault he committed at age 14. Mr. Westwood entered into plea negotiations with the State and settled on a resolution that would have allowed him to plead guilty to a reduced set of original charges. Although the victim disagreed with this resolution, the State justified the agreement based on Mr. Westwood's young age.

The trial court was unimpressed with the parties' proposed resolution. It rejected the plea agreement as inconsistent with prosecutorial standards and it refused to allow entry of Mr. Westwood's plea. The case then proceeded to a jury trial and Mr. Westwood was convicted of several felonies.

On appeal, the parties both assign error to the trial court's rejection of Mr. Westwood's proposed plea and plea agreement. We concur with this assessment. Two distinct legal errors tainted the trial court's rejection of the parties' negotiated settlement. First, the court did not distinguish between a proffered plea and a proposed plea agreement. Under current statute and rules, Mr. Westwood should have been afforded the opportunity to enter a plea regardless of the merits of his plea agreement. Second, respect for constitutional separation of powers required the trial court to defer to the State's tenable position that its plea agreement was consistent with prosecutorial standards. This was not done.

We remand Mr. Westwood's case to allow for entry of a plea pursuant to a negotiated plea agreement.

## BACKGROUND

Given the narrow issue addressed in this opinion, only a brief recitation of facts is warranted. In 2012, A.B. was attacked at knifepoint by a male individual who broke into her home. The individual attempted to rape A.B., but she fended him off. After the individual fled the scene, A.B. called 911 and went to the hospital for a sexual assault examination. DNA (deoxyribonucleic acid) collected from A.B. led the police to 14-year-

old Dahndre Westwood. Mr. Westwood was arrested and A.B. made a positive identification of Mr. Westwood from two photos taken of him the day he was arrested.

The State charged Mr. Westwood with attempted first degree rape, first degree burglary, first degree assault, second degree assault, and indecent liberties. Mr. Westwood was 17 years old at the time charges were filed. The juvenile court declined jurisdiction.

Prior to trial, the parties arrived at a proposed plea agreement. Under the terms of the agreement, Mr. Westwood would plead guilty to the pending count of indecent liberties, along with a charge of third degree assault pending in a different case. The remaining charges would be dismissed.

The plea agreement was presented to the trial court at a pretrial motion hearing. The State explained it had proposed the agreement, despite A.B.'s opposition, because Mr. Westwood was 14 years old at the time of the offense and recent case law from the Supreme Court indicated that youth needed to be taken into consideration in case disposition. The State submitted that the plea agreement was reasonable and would result in Mr. Westwood being "under the thumb" of the Indeterminate Sentencing Review Board for the rest of his life. 1 Report of Proceedings (Sept. 18, 2017) at 6.

No. 35792-9-III
*State v. Westwood*

After recessing to consider the terms of the proposed plea agreement, the court

directed the parties to RCW 9.94A.450, the statute articulating prosecutorial standards

for plea dispositions in criminal cases:

> STANDARD: (1) Except as provided in subsection (2) of this section, a defendant will normally be expected to plead guilty to the charge or charges which adequately describe the nature of his or her criminal conduct or go to trial.
> (2) In certain circumstances, a plea agreement with a defendant in exchange for a plea of guilty to a charge or charges that may not fully describe the nature of his or her criminal conduct may be necessary and in the public interest. Such situations may include the following:
> (a) Evidentiary problems which make conviction on the original charges doubtful;
> (b) The defendant's willingness to cooperate in the investigation or prosecution of others whose criminal conduct is more serious or represents a greater public threat;
> (c) A request by the victim when it is not the result of pressure from the defendant;
> (d) The discovery of facts which mitigate the seriousness of the defendant's conduct;
> (e) The correction of errors in the initial charging decision;
> (f) The defendant's history with respect to criminal activity;
> (g) The nature and seriousness of the offense or offenses charged;
> (h) The probable effect on witnesses.

The court began with subsection (1) of the statute. The State agreed that its

proposed plea agreement did not totally describe the nature of Mr. Westwood's criminal

conduct. Thus, the court moved on to subsection (2). The trial court reviewed (a)-(e) of

subsection (2) and (g)-(h). After brief discussions with counsel for the State, the court

4

determined that none of the aforementioned provisions supported the parties' plea

agreement. The court did not inquire as to (2)(f), which addresses a "defendant's history

with respect to criminal activity." *Id.*

After hearing from the parties regarding RCW 9.94A.450, the trial court took

another recess. Upon reconvening, the judge announced he was denying the parties'

requested resolution. The case was then set for trial. A jury subsequently convicted

Mr. Westwood of attempted first degree rape, first degree burglary, and first degree

assault. He was acquitted of indecent liberties.

Mr. Westwood appeals.

ANALYSIS

*Plea bargaining: the historical and legal context*

Plea bargaining is "an essential component of the administration of justice."

*Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

The benefits of plea bargains include finality, acceptance of responsibility, preservation

of resources, and the exercise of mercy. Plea bargaining is widely considered an

acceptable component of criminal practice. But this was not always so. Until the United

States Supreme Court's 1971 decision in *Santobello*, plea bargaining was viewed with

skepticism. "[I]t was a sub rosa process shrouded in secrecy and deliberately concealed

5

by participating defendants, defense lawyers, prosecutors, and even judges." *Blackledge*

*v. Allison*, 431 U.S. 63, 76, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Reforms beginning

in the 1970s brought plea bargaining out of the shadows by clarifying and codifying plea

bargain procedures. *See* FED. R. CRIM. P. 11 advisory committee's note to 1974

amendments, 62 F.R.D. 271, 277-86 (1974). In 1981, Washington joined the national

reform effort by establishing procedures for judicial approval of plea agreements

pursuant to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. *See* former

RCW 9.94A.080 (1981), *recodified as* RCW 9.94A.421; former RCW 9.94A.090 (1981),

*recodified as* RCW 9.94A.431.

The SRA confers explicit approval on the plea bargaining process. Under the SRA,

the prosecution may "do any of the following" with respect to plea agreements:

> (1) Move for dismissal of other charges or counts;
> (2) Recommend a particular sentence within the sentence range
> applicable to the offense or offenses to which the offender pled guilty;
> (3) Recommend a particular sentence outside of the sentencing range;
> (4) Agree to file a particular charge or count;
> (5) Agree not to file other charges or counts; or
> (6) Make any other promise to the defendant, except that in no instance
> may the prosecutor agree not to allege prior convictions.

RCW 9.94A.421.

The SRA recognizes that judges play no role in plea negotiations. *Id*. Instead, plea

agreements are contracts between the defendant and the State. *State v. Sledge*, 133 Wn.2d

828, 838-39, 947 P.2d 1199 (1997). Once a plea agreement has been reached, it must be disclosed to the court on the record. RCW 9.94A.431(1). "The court, at the time of the plea, shall determine if the agreement is consistent with the interests of justice and with the prosecuting standards." *Id*. Further,

> [i]f the court determines it is not consistent with the interests of justice and with the prosecuting standards, the court shall, on the record, inform the defendant and the prosecutor that they are not bound by the agreement and that the defendant may withdraw the defendant's plea of guilty, if one has been made, and enter a plea of not guilty.

*Id*. Regardless of the nature of the parties' agreement, "[t]he sentencing judge is not bound by any recommendations contained in an allowed plea agreement." RCW 9.94A.431(2).

*The abuse of discretion standard governs rejected plea agreements*

Trial courts enjoy discretion to accept or reject plea agreements. *State v. Conwell*, 141 Wn.2d 901, 909, 10 P.3d 1056 (2000). If a plea agreement is rejected based on a court's valid exercise of discretion, that determination is entitled to deference on appeal. But the same is not true when rejection is rooted in a legal determination. We review a trial judge's legal decisions de novo, even when the decision is made in the context of the judge's discretionary authority. *See Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833-34, 161 P.3d 1016 (2007).

*The trial court abused its discretion in Mr. Westwood's case*

The parties both argue that the trial court committed legal error in rejecting Mr. Westwood's attempt to enter a guilty plea pursuant to a plea agreement. We agree for two distinct reasons. First, the court failed to recognize the difference between a plea and a plea agreement. Regardless of whether the trial court had a basis for rejecting Mr. Westwood's plea agreement, it did not have reason to reject Mr. Westwood's unopposed proffer to plea to an original charge. Second, the court did not properly consider the prosecutorial standards governing plea agreements and give deference to the State's assessment of those standards. This caused the court's discretionary decision of whether to accept the parties' plea agreement to be tainted by legal error.

> 1. *Legal error regarding the difference between a plea and a plea agreement*

RCW 9.94A.431(1) provides the trial court discretion to reject a plea agreement that is inconsistent with the interests of justice or prosecutorial standards. However, this discretion only applies to a plea *agreement*; "the court does not have discretion to reject a valid guilty plea offered notwithstanding that agreement." *Conwell*, 141 Wn.2d at 909. When presented with an unsatisfactory plea agreement, the statute does not contemplate that a court will be able to reject a defendant's proffered plea. Instead, the court can only respond by "[i]nforming the defendant of his options." *Id*. These include, (1) informing

8

"the defendant and the prosecutor that they [i.e., the defendant and the prosecutor] are not bound by the agreement" and (2) allowing the defendant to withdraw a plea if one has been made. RCW 9.94A.431(1). If, at the time the court has rejected a plea agreement, the defendant has not yet entered a plea, this option must be given. *Conwell*, 141 Wn.2d at 909 n.3.

Guilty pleas are governed by CrR 4.2, not RCW 9.94A.431. This is true regardless of whether there is a plea agreement. *See Conwell*, 141 Wn.2d at 907-08; *State v. Rhode*, 56 Wn. App. 69, 72, 782 P.2d 567 (1989). When a guilty plea is proffered, the court's role is limited to determining voluntariness as set forth in CrR 4.2(d). "[N]o statute or rule of court . . . grants a trial court authority to decline a plea of guilty made competently, knowingly, voluntarily, unconditionally, unequivocally and on advice of counsel." *State v. Martin*, 94 Wn.2d 1, 5, 614 P.2d 164 (1980).

Given the distinctions between RCW 9.94A.431 and CrR 4.2, the trial court here was required to allow Mr. Westwood to enter a plea to count 4 of the information, charging him with indecent liberties, regardless of any concerns about the plea agreement. If the court disagreed with the terms of the plea agreement pursuant to RCW 9.94A.431, the plea colloquy would need to include a warning that the court would not hold the parties to the terms of their agreement (i.e., the State would be relieved of its promise to

9

dismiss counts set forth in the information). And, in light of the reduced value of the

plea agreement, Mr. Westwood would also need to be afforded the ability to withdraw

his plea or decline to enter a plea. But the trial court lacked authority to prevent entry

of Mr. Westwood's plea based purely on a disagreement with the plea agreement. *Rhode*,

56 Wn. App. at 73.[1]

      *State v. Haner*, 95 Wn.2d 858, 631 P.2d 381 (1981), does not counsel otherwise.

*Haner* was decided prior to implementation of the SRA. At the time of *Haner*, the only

authority guiding a judge's discretion to accept or reject a plea agreement was former

CrR 4.2(e) (1973), which provided "[n]o agreement shall be made which specifies what

action the judge shall take on or pursuant to the plea or which attempts to control the

exercise of his [or her] discretion, and the court shall so advise the defendant." Relying

on former CrR 4.2(e), *Haner* ruled a plea agreement that involves the dismissal or

amendment of charges impinges on a trial court's sentencing authority. In order to protect

this authority, *Haner* held that "the court's authority to approve or deny a plea bargain

must include the right to refuse or allow the dismissal or amendment of the charges."

95 Wn.2d at 864.

---

[1] The trial court's decision regarding whether to permit dismissal of the remaining counts in the information would turn on CrR 8.3(a).

While the current version of CrR 4.2(e) still addresses guilty pleas, the rule now references RCW 9.94A.431 for guidance on plea agreements. As previously noted, RCW 9.94A.431 does not contain language similar to what was set forth in the former version of CrR 4.2(e) discussed in *Haner*. No longer are the parties prohibited from entering into an agreement that "attempts to control the exercise" of the trial court's sentencing discretion. *See* former CrR 4.2(e). To the contrary, RCW 9.94A.421 explicitly condones charge-bargaining, the very purpose of which is to limit sentencing discretion. Rather than prohibiting charge-bargaining or other similar plea agreements, the plea agreement statute merely recognizes that once a plea agreement is "allowed," "[t]he sentencing judge is not bound by any recommendations contained" therein. RCW 9.94A.431(2). In other words, the statute does not oblige the court to follow the terms of the parties' contractual agreement, but the court is still bound by the limits set by the defendant's plea.

Because the legal landscape has changed since *Haner*, the trial court here was no longer authorized to reject Mr. Westwood's plea based on disagreement with the terms of the plea agreement.

Our disposition would be different had Mr. Westwood sought to plead guilty post-arraignment in order to fend off an enhanced charge. Case law from our Supreme Court

11

has interpreted the right to plead guilty as a right that extends up until the time of trial. *State v. James*, 108 Wn.2d 483, 486-87, 739 P.2d 699 (1987); *State v. Jones*, 99 Wn.2d 735, 737, 740, 664 P.2d 1216 (1983) (applying CrR 4.2(a)'s protections at the time of trial). But the right is only unconditional (in that it can be exercised over the State's objection) at the time of arraignment. *James*, 108 Wn.2d at 487-88. After arraignment, a defendant's right to plead guilty becomes conditional and must be balanced against the State's competing interests in seeking enhanced charges. *James*, 108 Wn.2d at 488-90. Our case law does not permit a defendant to "sit by" while the State expends its investigatory resources and then plead guilty only after the discovery of new incriminating evidence in order to preclude "the prosecution from upgrading the charge based on the newly discovered evidence." *Id*. at 489.

Mr. Westwood's case does not raise the type of concerns our case law has relied on to deny post-arraignment guilty pleas. The State was not seeking an enhanced charge and did not object to Mr. Westwood's plea. Thus, there were no conditions militating against Mr. Westwood's right to enter a plea to a pending charge.

We note that Mr. Westwood's right to enter a plea to a pending count does not dictate the outcome of the other remaining counts. It is not unusual for a defendant to plead to one pending count and for the remaining counts to proceed to trial. A trial court's

12

decision as to whether to dismiss pending counts or to permit an amended information that effectively dismisses pending counts turns on application of CrR 8.3 and CrR 2.1(d) and whether or not the court accepts the parties' plea agreement. These are separate legal matters and require a different analysis.[2]

> ## 2.  *Legal error regarding the standard for rejecting a plea agreement*

Separate from rejecting a plea, a trial court can reject a plea agreement if the agreement is inconsistent with the interests of justice or with prosecuting standards. RCW 9.94A.431(1). Here, the trial court's focus was solely on the prosecuting standards set forth at RCW 9.94A.450. The court made no separate inquiry into the interests of justice. In addressing the prosecutorial standards, the court reviewed RCW 9.94A.450(2)(a)-(e) and (g)-(h). Believing the parties' plea agreement did not meet the criteria outlined by these standards, the court rejected the plea agreement and set Mr. Westwood's case for trial.

---

[2] During Mr. Westwood's pretrial hearing, the parties discussed the filing of an amended information that would have combined a charge from a separate case with the pending count of indecent liberties. However, a motion to amend was never presented to the court. Instead, Mr. Westwood merely requested to plead to a pending count. The trial court never discussed CrR 2.1(d) or CrR 8.3. We therefore do not discuss whether the trial court could have properly denied the State's motion to file an amended information or to dismiss pending charges.

In rejecting the parties' plea agreement, the trial court overlooked two aspects of RCW 9.94A.450(2). First, the trial court failed to acknowledge RCW 9.94A.450(2)(f), which states that the prosecution may engage in a plea agreement to a charge that does not fully describe the nature of the defendant's criminal conduct based on the "defendant's history with respect to criminal activity." Second, the trial court failed to recognize that the plea agreement standards set forth at RCW 9.94A.450(2) are not exclusive. The statute provides that circumstances justifying a plea agreement to a lesser charge "*may* include" the situations listed. RCW 9.94A.450(2) (emphasis added). Based on this wording, the prosecution could validly justify a plea agreement to a reduced charge based on reasons other than those specifically enumerated by statute.

The trial court's two oversights had particular salience in Mr. Westwood's case. The State explained it had offered Mr. Westwood a favorable plea disposition based on recent jurisprudence critiquing "criminal procedure laws that fail to take defendants' youthfulness into account." *Graham v. Florida*, 560 U.S. 48, 76, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). Both the United States Supreme Court and the Washington Supreme Court have recognized that "'[c]hildren are different.'" *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017) (quoting *Miller v. Alabama*, 567 U.S. 460, 481, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). Juveniles have diminished culpability

due to lack of maturity, vulnerability to peer influences, and impaired executive functioning. *Miller*, 567 U.S. at 471. In addition, a child's character is less fixed and more capable of reform than an adult's. *Id.* As a result of these circumstances, juveniles "'are less deserving of the most severe punishments,'" than their adult counterparts. *Miller*, 567 U.S. at 471 (*quoting Graham*, 560 U.S. at 68).

Given that Mr. Westwood was only 14 years of age at the time of his offense conduct, the State's concern for the extenuating features of youth bore on RCW 9.94A.450(2)(f), which would obviously focus on Mr. Westwood's youth. In addition, developments in juvenile jurisprudence provided the State a basis for recommending a mitigated disposition outside the nonexclusive factors listed in RCW 9.94A.450(2).

Because the State articulated a tenable justification for its plea agreement pursuant to RCW 9.94A.450, its assessment was entitled to deference. The statutory prosecutorial standards were written "solely for the guidance of prosecutors." RCW 9.94A.401. Although RCW 9.94A.431 authorizes judicial oversight of prosecutorial standards in the context of plea agreements, such oversight "must be exercised with due regard for constitutional separation of powers." *State v. Agustin*, 1 Wn. App. 2d 911, 916-19, 921-22, 407 P.3d 1155 (2018). Courts cannot interfere with the State's good faith exercise of its discretionary powers. *Id.* at 913, 921. This prohibition logically extends to the State's

assessment of whether a plea agreement is consistent with prosecutorial standards. We therefore hold that once the State articulates a tenable basis for justifying a plea agreement under RCW 9.94A.450, the court cannot reject the plea agreement as inconsistent with prosecutorial standards.

*Mr. Westwood is entitled to a limited remand*

The standard remedy for improper rejection of a plea and a plea agreement is to remand with instructions that the State reoffer its plea and provide the defendant an opportunity for acceptance. *Lafler v. Cooper*, 566 U.S. 156, 174, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). However, the context in which we have received this case prohibits this approach. Because the jury acquitted Mr. Westwood of count 4, indecent liberties, double jeopardy prevents Mr. Westwood from entering a valid plea pursuant to the original plea agreement. Given this complication, the parties agree that the appropriate remedy is to remand with instructions that the State offer Mr. Westwood a plea agreement that approximates the benefits contemplated by the parties' original agreement.

Should Mr. Westwood accept the State's offer and enter a valid plea, then the current counts of conviction must be vacated and Mr. Westwood shall be sentenced pursuant to the terms of his plea. If Mr. Westwood rejects the State's offer or fails to enter

16

a valid plea, then his existing counts of conviction will remain, subject to appellate review, as discussed below.

*The remaining claims on appeal need not yet be addressed*

Mr. Westwood has made several additional challenges to his convictions and sentence. Our disposition of the plea agreement issues likely moots those arguments. Should Mr. Westwood enter a valid plea to an offer tendered on remand, his current convictions will be vacated and we will not need to assess whether the convictions or related sentences are subject to appellate relief. But if no valid plea occurs, the remaining claims will require resolution. We therefore will retain jurisdiction over this appeal to allow for the possible entry of a plea. Upon notification regarding the entry or nonentry of a plea, this court will either terminate review or decide the merits of Mr. Westwood's remaining claims.

## CONCLUSION

We retain jurisdiction over this appeal and remand to the trial court to allow for possible entry of a plea. On remand, within 60 days of the date of this opinion, the trial court shall hold a hearing to allow for entry of a plea. Within 30 days of the hearing, orders related to the change of plea hearing shall be transmitted to this court. Also within

17

No. 35792-9-III
*State v. Westwood*

30 days of the hearing, the parties may (but need not) file supplemental briefing advising this court of any additional action appropriate to this appeal.

Our retention of jurisdiction does not extend to dispositional orders issued subsequent to an order accepting Mr. Westwood's plea. If, on remand, Mr. Westwood enters a valid plea to a new charge, the trial court may take additional appropriate action, including vacating the current counts of conviction and sentencing. In such circumstances, any further appellate issues shall be governed by a separate notice of appeal.

Pennell, J.

I CONCUR:

Lawrence-Berrey, C.J.

18

No. 35792-9-III

KORSMO, J. (dissenting) — The majority unnecessarily trims the discretion of trial judges who oversee plea agreements. Under this ruling, judges now must permit an amended information and accept a voluntarily offered plea regardless of the judge's opinion of the appropriate result. It also effectively prevents the judge from acting on the victim's objections. The authority cited by the majority does not support this outcome. I dissent.

There are a pair of factors confounding the analysis of this case. First, the case suffers from lack of adversarial briefing, making it a particularly weak vehicle for expanding prosecutorial discretion at the expense of judicial discretion. The prosecutor understandably wants to stand by his plea bargain and expand his own authority, and the defendant wants to enforce the original plea agreement. No one is left to argue the trial court's point of view. If bad facts make bad law, then one-sided briefing provides a similar outcome.[1]

---

[1] After respondent filed its brief, the Chief Judge of this court unsuccessfully attempted to find an amicus willing to take an opposing view.

A second confounding factor is found in the trial court's decision to decline jurisdiction of this case to adult court. The juvenile court already has considered the issue of the defendant's maturity, or lack thereof, when assessing the appropriate court in which to adjudicate this case. Mr. Westwood was sent to adult court *at the discretion of the trial judge* after consideration of the factors that the prosecutor belatedly relied on to change his mind about the appropriate resolution of the case.

Criminal defendants have a right under our court rules to plead guilty at arraignment. *State v. Martin*, 94 Wn.2d 1, 4, 614 P.2d 164 (1980); *accord State v. Ford*, 125 Wn.2d 919, 928, 891 P.2d 712 (1995) (noting that *Martin* "stands for the proposition that a right to plead guilty at arraignment exists"). This court concluded that the right even extends to entry of an *Alford* plea, despite the fact that plea is not one recognized in CrR 4.2(a). *State v. Hubbard*, 106 Wn. App. 149, 155-56, 22 P.3d 296 (2001). Thus, the filing of charges is effectively a plea offer. However, once a defendant has exercised the right to plead not guilty, he may not change his mind and insist on pleading guilty unless there is an arraignment on new charges. *E.g.*, *State v. Bowerman*, 115 Wn.2d 794, 799-801, 802 P.2d 116 (1990); *State v. James*, 108 Wn.2d 483, 488, 739 P.2d 699 (1987); *Hubbard*, 106 Wn. App. at 153. After considering the post-*Martin* case law, the *James* court stated:

> Thus, the unconditional nature of the right to plead guilty does not apply in subsequent proceedings if the defendant voluntarily, knowingly, and intelligently enters a not guilty plea at arraignment. Because James had the

> unfettered opportunity to enter a plea at arraignment, at which he entered a legally sufficient plea of not guilty, his right to plead guilty was no longer unconditional.

108 Wn.2d at 488. The *James* ruling adopted an earlier ruling of Division One of this court, *State v. Duhaime*, 29 Wn. App. 842, 631 P.2d 964 (1981). There the court stated the nature of the *Martin* right: "Absent a controlling rule or statute, it is discretionary with the trial court to permit or deny the withdrawal of a plea of not guilty." *Id*. at 855.

The majority misreads *Martin* by failing to appreciate that its primary case, *State v. Conwell*¸ 141 Wn.2d 901, 10 P.3d 1056 (2000), was also an arraignment case rather than an amendment case. In *Conwell*, the prosecutor initially filed felony charges in district court under that court's committing magistrate power.[2] *Id*. at 903-04. The parties reached an agreement and scheduled an arraignment in superior court on two gross misdemeanor offenses. *Id*. at 904. Uncomfortable with the plea agreement, the court declined to accept the proffered guilty pleas and instead entered not guilty pleas. *Id*. at 905. The superior court later allowed the prosecutor to amend the information to add a felony charge. *Id*. at 906. This court granted discretionary review and affirmed the amendment. *Id*. The Washington Supreme Court granted review and reversed, holding that the trial court had deprived Mr. Conwell of his *Martin* right to plead guilty at the

---

[2] *See* RCW 3.66.060(2); CrRLJ 3.2.1(g)(2). The district court has no authority to resolve felony charges, but does have the ability to determine probable cause and set conditions of release or bond for a limited time period on felony cases filed in district court. CrRLJ 3.2.1(g).

superior court arraignment on the two gross misdemeanor offenses. *Id*. at 907-09. The

court vacated the amendment and allowed Conwell to enter a plea to the original gross

misdemeanor charges.[3] *Id*. at 910.

Thus, the first of the majority's errors rests in not recognizing the limited *Martin*

right. Mr. Westwood had already entered a plea of not guilty in superior court. He had

no right to change his mind and plead to portions of the information filed against him,

even if the prosecutor was in agreement. The trial judge also had a say. It is that

authority that the majority now tries to remove in clear conflict with *James*, *Duhaime*,

and other cases.[4]

The other aspect of the problem is that any amended information is only filed with

the approval of the superior court. CrR 2.1(d); *State v. Haner*, 95 Wn.2d 858, 631 P.2d

381 (1981). The rule's sole limitation is that the trial judge may not prejudice substantial

rights of the defendant. CrR 2.1(d); *State v. Gehrke*, 193 Wn.2d 1, 7, 434 P.3d 522

(2019) (plurality); *Ford*, 125 Wn.2d at 928. A trial judge can reject an amended

---

[3] Even if *Martin* applied to this case, the acquittal on the indecent liberties charge
precludes this court from ordering the appropriate remedy of remand to execute the
agreement.

[4] Two members of this panel previously signed an opinion upholding the trial
court's discretion to reject a plea to an amended charge following two mistrials of the
original charge. After hearing objection from the murder victim's mother, the trial court
declined to permit the amendment or accept the plea. *State v. Lazcano*, No. 32228-9-III,
slip op. at 9 (Wash. Ct. App. Mar. 16, 2017) (unpublished), http://www.courts.wa.gov
/opinions/pdf/322289.pdf.

4

information, as was done here, and thereby scuttle the plea agreement. On point is *Haner*, a case that the majority mistakenly distinguishes as based on an earlier version of CrR 4.2. *Haner* was based on the court's authority to accept or reject an amended information and, therefore, a plea bargain. "Thus, to have any meaning beyond its ordinary sentencing powers, the court's authority to approve or deny a plea bargain must include the right to refuse or allow the dismissal or amendment of the charges." 95 Wn.2d at 864. The court then upheld the authority of the trial judge to reject the amendment because it did not believe the bargain was appropriate in light of the defendant's criminal history. *Id*. at 864-65.

Those are the two primary problems with the majority opinion—there is no right to plead guilty other than at arraignment (*Martin*, 94 Wn.2d 1) and amended charges may only be filed with the approval of the trial court (*Haner*, 95 Wn.2d 858). Mr. Westwood had already pleaded not guilty at his superior court arraignment and had no right to plead guilty to the bargained charges without court approval, just as the prosecutor had no ability to force the trial court to accept the amended information. For both reasons, the trial court correctly rejected the plea and bargain.

Although the failure to follow *Martin* is the primary problem, the majority's attempt to find solace in an inapplicable statute, RCW 9.94A.411, creates additional problems. The prosecutorial guidelines stated there are advisory only and are not binding on the prosecutor or anyone else, nor do they create an enforceable right against the State.

5

RCW 9.94A.401. Nonetheless, the majority concludes that the trial court's discretion in approving or disapproving a plea bargain is limited to determining whether the prosecutor abused his discretion in following the nonbinding standards. This is a misreading of legislative history.

The *Haner* standards were recognized and incorporated into the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. DAVID BOERNER, SENTENCING IN WASHINGTON, § 12.2, at 12-3, § 12.4, at 12-10, 12-12 (1985).[5] Professor Boerner's discussion of pre-SRA sentencing practices recognized *Haner* as summarizing the existing law of the era—judicial discretion in plea approval[6] and amendment of charges was the chief check on prosecutorial discretion in plea bargaining. *Id*. at 12-3. Recognizing that initial charging authority rested with the elected prosecutor of each county, the SRA adopted prosecutorial guidelines to influence the prosecutor's initial charging discretion in a manner consistent with the reforms of the SRA. *Id*. at 12-12, 12-46–12-48. However, because the standard ranges adopted by the SRA lessen the prosecutor's influence on punishment, the prosecutorial guidelines "make no attempt to control the exercise of that discretion." *Id*. at 12-12. Instead, trial judges were given

---

[5] Professor Boerner, then the chief criminal deputy prosecuting attorney for King County, drafted the initial legislative proposal for the SRA and was involved in its development. *See Sentencing in Washington*, preface.

[6] Boerner also noted that the trial court's discretion to reject a plea bargain, recognized in *Haner*, was seldom exercised by the judiciary. BOERNER, supra, § 12.2, at 12-4.

express statutory authority to look into plea agreements and approve, or disapprove, of a

plea bargain, even though they still had to accept a properly offered guilty plea. *Id*.

(citing to former RCW 9.94A.090(1), now current RCW 9.94A.431(1)). Under the SRA,

judges, however, also still retain "the 'clear discretionary authority to refuse to accept a

plea bargain.'" *Id*. at 12-13 (quoting *Haner*, 95 Wn.2d at 861). Boerner later summed

up the situation:

> Where, however, the agreement requires judicial action, such as
> amendment of the information to reduce the degree of the crime charged or
> the dismissal of counts, the court retains its preexisting authority to refuse
> to execute the agreement. The Supreme Court has held that judges have the
> "clear discretionary authority to refuse to accept a plea bargain . . ." and
> that such authority "must include the right to refuse or allow the dismissal
> or amendment of the charges." The Court carefully distinguished the initial
> decision to prosecute, stating "there is no role for the court at the time the
> prosecuting attorney files the original charge. . . ." Thus while a defendant
> has the right to plead guilty to all pending charges, no concomitant right to
> plead guilty to reduced charges exists. Judges clearly have the authority,
> and under the Sentencing Reform Act the responsibility, to determine
> whether the plea agreement is in the interests of justice or complies with the
> policies expressed in the prosecuting standards. Where a determination is
> made that the plea agreement is not consistent with the interests of justice
> or with the prosecuting standards, judicial authority includes both the
> power to free the parties from the obligations of their agreement and the
> power to refuse to allow the amendment or dismissal of charges. This
> judicial power is, of course, subject to appellate review for abuse of
> discretion.

*Id*. at 12-50–12-51 (footnotes omitted; emphasis added).

Instead of according deference to the trial judge's discretion to accept or reject the

plea agreement, the majority reduces the trial judge's role to one of weighing whether the

prosecutor had decent reasons for entering into the agreement. This standard reads the trial court's independent authority completely out of the picture. Even if this were the correct standard, the rationale for the plea bargain fails because it misreads the nature of the brain development problem. The question is one of sentencing culpability, not plea disposition. *E.g.*, *State v. Moretti*, __ Wn.2d __, 446 P.3d 609 (2019).[7]

Properly reviewed for abuse of *judicial* discretion, this is an easy case. The trial court had already assessed the defendant's development and the appropriate charges for the conduct when it decided to decline the case from juvenile court to superior court. Then, it exercised its discretion to accord the victim's concerns in deciding whether or not to accept the plea bargain. It had very tenable grounds for rejecting the plea agreement. Accordingly, there could be no abuse of discretion. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

No defendant has a right to plead guilty pursuant to a bargain once a not guilty plea has been entered at arraignment. The right to plead guilty recognized by our court rules is the right to plead guilty at arraignment. After that, guilty pleas and/or amended charging documents only enter at the discretion of the trial judge. Here, the trial court exercised its discretion and declined this case to adult court. Mr. Westwood thereafter

---

[7] The sentence should be reversed and the case remanded for the trial judge to consider the defendant's youth as a potential mitigating factor. *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017).

No. 35792-9-III
*State v. Westwood*

exercised his right to plead not guilty in that court. He needed the trial court's consent to change that plea, just as the prosecutor needed the trial court's consent to amend the charging document. The trial court did not abuse its discretion when it declined to offer its consent. Accordingly, I dissent.

_____
Korsmo, J.