

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35792-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAHNDRE KAVAUGN WESTWOOD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Dahndre Westwood appeals his convictions for

attempted first degree rape, first degree burglary, and first degree assault. He raises

several assignments of error.

In a published decision that did not terminate review, we held that the trial court

abused its discretion by rejecting a proposed plea agreement. We remanded the appeal,

directing the State to offer Westwood a plea deal similar to the one rejected by the trial

court. *State v. Westwood*, 10 Wn. App. 2d 543, 448 P.3d 771 (2019). On remand, the

State offered Westwood a plea deal that required him to plead guilty to attempted second

degree rape. Westwood rejected the State's offer.

This matter is now before us to address Westwood's remaining assignments of error. We generally affirm, but remand for resentencing for the trial court to determine whether the three felony convictions involve the same criminal conduct.

We also address Westwood's supplemental argument, requesting that resentencing be conducted by a different judge. We deny his request.

## FACTS AND PROCEDURAL BACKGROUND

On December 6, 2012, at approximately 4:30 a.m., A.B. was alone in her duplex. She heard a noise, looked up, and saw a man standing in the hallway. The man wore black clothing and a dark-colored bandana on his face. He was holding a large curved knife.

The man pushed A.B. into her bedroom and onto her bed. The man told A.B. to take off her clothes and threatened to kill her. He tried to remove her clothes by force but was unsuccessful. He shoved his hand down her pajama pants and touched her leg. A.B. clawed at his hands and knocked the knife away. Headlights from several passing cars shone through the window. The man looked out the window, told A.B. that he would kill her if she told anyone, and ran out of the house.

A.B. immediately locked her door and called 911. She then went to the hospital and received a sexual assault examination. A nurse took swab samples from A.B.'s hands and mouth.

The right fingertip swab contained the deoxyribonucleic acid (DNA) of A.B. and an unknown man. In December 2014, the crime lab matched the unknown male DNA to Dahndre Westwood. After obtaining a warrant, police took an oral swab from Westwood to collect his DNA. Westwood's DNA matched that obtained from the swab of A.B.'s finger. A detective showed A.B. two photographs of Westwood and she identified him as her attacker.

The State charged Westwood with attempted first degree rape, first degree burglary, first degree assault, second degree assault, and indecent liberties. Westwood was 14 years old on the date of the alleged attack and 17 years old on the date he was first charged. The juvenile court declined to exercise jurisdiction over Westwood and Westwood was tried in adult court.

Prior to trial, the parties proposed a plea agreement wherein the State would amend the information to allege only indecent liberties, and Westwood would plead guilty to that charge as well as to a third degree assault charge in a different case. The trial court rejected the proposed plea agreement as inconsistent with prosecutorial standards, and the

3

case proceeded to a jury trial.  Defense counsel's theory of the case was that Westwood

did not attack A.B., but that another person did while wearing clothing with Westwood's

DNA on it.

On the second day of trial, juror 5 sent a note to the court that read, "Jury [sic] 7

and 8 were talking tranfer [sic] DNA at the last break."  Clerk's Papers (CP) at 378-79.

Westwood moved for a mistrial.  The State opposed the motion.  The court questioned

juror 5, who explained that in the presence of the entire jury, that juror 9 said it was

impossible to transfer DNA to clothing through touch.  The court determined the

discussion actually occurred between jurors 8 and 9.  The court dismissed jurors 8 and 9

and replaced them with alternate jurors.

In the presence of the prosecution and defense counsel, the court questioned the

remaining jurors individually as to their ability to perform their duty.  Each juror

responded that they would decide the case based only on admitted evidence.  Westwood

renewed his motion for a mistrial, and the court denied his motion.

At trial, witnesses testified to the preceding facts.  In addition, the State called

Washington State Patrol Crime Laboratory forensic DNA supervisor Anna Wilson, who

testified it would be possible for a person's DNA to be present at a crime scene through

DNA transfer even if the person was never present at the crime scene.  Defense counsel

4

chose not to call a DNA expert witness, explaining he was satisfied with Ms. Wilson's testimony.

The court instructed the jury that it was to base its verdict solely on evidence admitted at trial. The jury found Westwood guilty of attempted first degree rape, first degree burglary, first degree assault, and second degree assault, and not guilty of indecent liberties. The jury specifically found that during the attempted rape, Westwood used or threatened to use a deadly weapon and feloniously entered A.B.'s home.

At sentencing, the trial court determined that double jeopardy principles required it to dismiss the second degree assault verdict. The State agreed.

Westwood argued his remaining felony convictions—attempted first degree rape, first degree burglary, and first degree assault—should be considered the same criminal conduct. The State argued, under *State v. Chenoweth*, 185 Wn.2d 218, 370 P.3d 6 (2016), separate offenses are not the same criminal conduct if the applicable statutes have different intent elements. The trial court hesitated before adopting the State's arguments. Eventually, it agreed that *Chenoweth* required it to determine that Westwood's three felony convictions were not the same criminal conduct because the convictions required proof of different intent elements. This determination resulted in higher offender scores

5

for the three convictions and also consecutive sentences for Westwood's two serious

violent offense convictions—attempted first degree rape and first degree assault.

Westwood requested an exceptional mitigated sentenced based on his age at the

time of the offenses. In support, Westwood submitted several pages of personal

background information. The information included that Westwood had been held back in

second or third grade because of immaturity, and that he was immature for his age at the

time of the offenses. Westwood also submitted 10 letters written by persons who knew

him. The letters praised Westwood's good qualities and argued he did not commit the

crimes with which he was charged. The court refused to impose an exceptional mitigated

sentence.

The court sentenced Westwood to confinement for 105 months on the attempted

rape charge, 47.5 months on the burglary charge, and 108 months on the first degree

assault charge. The court imposed consecutive sentences on the attempted rape and

assault convictions, for a total term of incarceration of 213 months. The court imposed a

$500 victim penalty assessment, a $200 criminal filing fee, and a $100 DNA collection

fee.

Westwood timely appealed.

ANALYSIS

A.    DENIAL OF MOTION FOR MISTRIAL

Westwood argues he was denied his article I, section 22 and Sixth Amendment to the United States Constitution right to a fair and impartial jury when the trial court denied his motion for a mistrial after two jurors discussed extrinsic DNA evidence.

"[T]he consideration of novel or extrinsic evidence by a jury is misconduct and can be grounds for a new trial." *State v. Balisok*, 123 Wn.2d 114, 118, 866 P.2d 631 (1994). "Novel or extrinsic evidence is defined as information that is outside all the evidence admitted at trial, either orally or by document." *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266, 270, 796 P.2d 737 (1990).

"The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). "We review the trial court's denial of a mistrial for abuse of discretion, and we find abuse only 'when no reasonable judge would have reached the same conclusion.'" *Id.* (internal quotation marks omitted) (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989)). "[A] trial court may ask questions of the jurors' subjective ability

7

to disregard extrinsic information before there is a verdict to potentially impeach." *State v. Gaines*, 194 Wn. App. 892, 898, 380 P.3d 540 (2016).

Juror 9 told juror 8 that it was impossible to transfer DNA evidence from touch to clothing. Jurors overheard this, and one juror informed the trial court. The court excused jurors 9 and 8. Then, the court questioned each juror individually as to their ability to perform their duty and to decide the case only on admitted evidence. Each responded they could. We believe the trial court made the appropriate inquiries and reasonably believed the remaining jurors could decide the case only on admitted evidence.

The State's expert testified it was possible for DNA evidence to transfer from touch to clothing. The jury knew it was possible, but found it did not occur in this instance. We conclude the trial court did not abuse its discretion by denying Westwood's motion for a new trial.

B.      DOUBLE JEOPARDY

1.      STANDARDS

Westwood argues the trial court violated his rights against double jeopardy by entering separate convictions for attempted first degree rape and first degree assault. We review double jeopardy challenges de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

"The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct in a single proceeding." *Id.*; U.S. CONST. amend. V; WASH. CONST. art. I, § 9. "Courts may not, however, enter multiple convictions for the same offense without offending double jeopardy." *Id.* at 770-71 (citing *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983)). The legislature has the power to define offenses and set punishments. *Id.* at 771 (citing *State v. Calle*, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995)). For this reason, "[w]here a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). "If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended." *Freeman*, 153 Wn.2d at 771.

A four-factor analysis determines whether multiple convictions violate double jeopardy. First, the court looks for express or implied legislative intent that offenses be punished separately. *Id*. at 771-72. "Second, if the legislative intent is not clear, we may turn to the *Blockburger*[1] test." *Id*. at 772. "Third, if applicable, the merger doctrine is

---

[1] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

9

another aid in determining legislative intent, even when two crimes have formally

different elements." *Id*. "Finally, even if on an abstract level two convictions appear to

be for the same offense or for charges that would merge, if there is an independent

purpose or effect to each, they may be punished as separate offenses." *Id*. at 773.

The remedy for a double jeopardy violation is vacation of the lesser conviction.

*State v. Portrey*, 102 Wn. App. 898, 907, 10 P.3d 481 (2000). "This is because the greater

offense 'typically carries a penalty that incorporates punishment for the lesser included

offence.'" *Freeman*, 153 Wn.2d at 775 (quoting Akhil Reed Amar & Jonathan L.

Marcus, *Double Jeopardy Law After Rodney King*, 95 COLUM. L. REV. 1, 28 (1995)).

2.    APPLICATION: LEGISLATIVE INTENT DETERMINES THE ISSUE

RCW 9A.52.050 provides: "Every person who, in the commission of a burglary

shall commit any other crime, may be punished therefor as well as for the burglary, and

may be prosecuted for each crime separately."

Here, the jury found Westwood guilty of attempted first degree rape, first degree

assault, and first degree burglary. Under RCW 9A.52.050, the trial court had authority to

separately punish and enter convictions for all three felonies. *State v. Collicott*, 118

Wn.2d 649, 658, 827 P.2d 263 (1992) ("Under [the burglary antimerger] statute it is

10

proper also for Mr. Collicott to be punished for each of the three offenses for which he has been charged.").

We distinguish *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979). There, because the State did not charge Johnson with burglary, the burglary antimerger statute did not apply. *See State v. Sweet*, 138 Wn.2d 466, 478, 980 P.2d 1223 (1999) (applying *Collicott* and distinguishing *Johnson*).

We conclude the trial court did not violate Westwood's right against double jeopardy by entering separate convictions for first degree assault and first degree attempted rape.

C.      SAME CRIMINAL CONDUCT

Westwood argues the trial court erred by finding his three convictions were not the same criminal conduct and by sentencing him to consecutive sentences for attempted first degree rape and first degree assault.

The defendant bears the burden to prove that offenses constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). A court's determination of same criminal conduct is reviewed for abuse of discretion or misapplication of law. *Id.* at 537.

No. 35792-9-III
*State v. Westwood*

*Scoring*

Separate crimes that encompass the same criminal conduct are counted as one crime for offender score purposes. RCW 9.94A.589(1)(a). Separate crimes constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* Crimes are committed with the same criminal intent when, viewed objectively, intent did not change from one crime to the next. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). "'Intent, in this context, is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime.'" *State v. Kloepper*, 179 Wn. App. 343, 357, 317 P.3d 1088 (2014) (quoting *State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990)). "In determining whether multiple crimes constitute the same criminal conduct, courts consider 'how intimately related the crimes committed are,' 'whether, between the crimes charged, there was any substantial change in the nature of the criminal objective,' and 'whether one crime furthered the other.'" *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 546-47, 299 P.3d 37 (2013) (quoting *State v. Burns*, 114 Wn.2d 314, 318, 788 P.2d 531 (1990)). And, "if one crime *furthered* another, and if the time and place of the crimes remained the same, then the defendant's criminal purpose or

12

intent did not change and the offenses encompass the same criminal conduct." *State v. Lessley*, 118 Wn.2d 773, 777, 827 P.2d 996 (1992).

For scoring purposes, a trial court has discretion to consider burglary as separate from other crimes even if they are the same criminal conduct. RCW 9A.52.050; *Lessley*, 118 Wn.2d at 781-82; *State v. Knight*, 176 Wn. App. 936, 962, 309 P.3d 776 (2013).

In *Chenoweth*, the Washington Supreme Court held that rape and incest were separate criminal conduct even when resulting from a single act. 185 Wn.2d at 224. However, the holding of that case, as well as the precedent it relies on, are specific to rape and incest. *See id.*; *State v. Bobenhouse*, 166 Wn.2d 881, 896, 214 P.3d 907 (2009); *Calle*, 125 Wn.2d at 780. As *Chenoweth* does not purport to overrule *Dunaway* or its progeny, its holding and rationale are limited to cases of rape and incest arising from a single act.

Here, the trial court declined to exercise its discretion. Rather, it perceived it was bound by *Chenoweth* to consider the attempted rape, assault, and burglary as separate offenses. As explained above, the court was not obligated to do so. Thus, the court's decision was based on a misapplication of law.[2]

---

[2] The trial court's initial instincts were spot-on. Before accepting the State's position, it noted *Chenoweth* did not explicitly overrule *Dunaway* and indicated a broad application of *Chenoweth* made no sense.

13

We conclude the trial court erred in failing to exercise its discretion to determine whether Westwood's convictions for attempted first degree rape, first degree assault, and first degree burglary constituted the same criminal conduct for scoring purposes.[3]

*Concurrent or consecutive sentences*

Westwood's convictions for first degree rape and first degree assault are classified as serious violent offenses. Former RCW 9.94A.030(45)(v), (vii) (2012). RCW 9.94A.589(1)(b) provides that in sentencing serious violent offenses, the crimes will be sentenced consecutively to each other if they arise from "separate and distinct criminal conduct." That standard is the same as the "same criminal conduct" standard of RCW 9.94A.589(1)(a). *Kloepper*, 179 Wn. App. at 356. If the trial court finds that the assault and rape offenses constituted the same criminal conduct for scoring purposes, the three convictions must be sentenced concurrently.

D.     STANDARD RANGE SENTENCE

"A sentence within the standard sentence range . . . for an offense shall not be appealed." RCW 9.94A.585(1). "Nevertheless, a defendant may appeal the trial court's

---

[3] Westwood requests that we decide the "same criminal conduct" issue. Because appellate courts grant the trial court a certain amount of discretion on that issue, it is more appropriate for us to remand and allow the trial court to decide it.

procedure in imposing his sentence." *Knight*, 176 Wn. App. at 957. "A discretionary sentence within the standard range is reviewable in 'circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range.'" *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (internal quotation marks omitted) (quoting *State v. McGill*, 112 Wn. App. 95, 100, 47 P.3d 173 (2002)).

A trial court may impose a sentence below the standard range if it finds by a preponderance of the evidence that the defendant's ability to appreciate the wrongfulness of his or her conduct was significantly impaired. RCW 9.94A.535(1)(e). The court must exercise its discretion to determine whether a defendant's youthfulness diminished his or her capacity to appreciate the wrongfulness of conduct. *See State v. O'Dell*, 183 Wn.2d 680, 696-99, 358 P.3d 359 (2015).

The trial court did not abuse its discretion in imposing a standard sentence. As an initial matter, the court did consider whether to impose an exceptional sentence. Thus, the court did not fail to exercise its discretion.

Westwood was held back in elementary school and was emotionally immature at the time he committed these crimes. This evidence permitted, but did not require, the trial court to conclude Westwood's youth and immaturity diminished his capacity to appreciate

the wrongfulness of entering a woman's home with a large knife and attempting to rape

her. We conclude the trial court did not abuse its discretion when it imposed a standard

range sentence.[4]

E.      PROCEDURE ON RESENTENCING

We now address in more detail what occurred on remand while we retained

jurisdiction. After Westwood rejected the State's plea offer, the trial court entered an

order sending the case back to us. The order attached a 10-page letter opinion, with its

own attachments, setting forth the trial court's reasons why the State's original plea offer

was not consistent with prosecutorial standards. The trial court's letter opinion is

appended to this court's decision. *See* CP at 626-35. We quote a portion of the letter

opinion:

> [Prior hearings in this case establish the State's initial plea offer was not motivated by lack of merit or evidentiary concerns.]
> The prosecution did not make an individual assessment of [Westwood's] youth as a mitigating factor to be considered in charging in the full context of [Westwood's] entire criminal history when it extended [the initial] plea offer to [him]. Further, it ignored the full consideration given to [Westwood's] youth as a mitigating factor in juvenile court. This Court concludes that if it had, no reasonable prosecutor could have concluded that [Westwood's] youth was a justification for dismissing two serious violent felonies [he] had committed.

---

[4] Because resentencing is required, we need not address Westwood's contention the trial court erred by imposing various legal financial obligations (LFOs). At resentencing, the trial court must impose LFOs consistent with recent legislative changes.

> . . . .
>      . . . The State has demonstrated over and over again that it does not believe Mr. Westwood's criminal conduct resulted from a youthful inability to resist transient violent urges.
>      . . . .
>      *The record before the Court demonstrates that Mr. Westwood is a dangerous and violent person.*

CP at 634 (emphasis added).

Westwood argues the trial court's written comments make clear it cannot give him a fair resentencing. Westwood requests us to order reassignment of his case to a different sentencing judge.

"Under the state and federal constitutions, a criminal defendant has the right to be tried and sentenced by an impartial court." *State v. Solis-Diaz*, 187 Wn.2d 535, 539, 387 P.3d 703 (2017) (citing U.S. CONST. amends VI, XIV; WASH. CONST. art. I, § 22). "Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." *Id.* at 540. "The law requires more than an impartial judge; it requires that the judge also appear to be impartial." *Id.*

A party may seek a new judge for the first time on appeal. *Id.* This is typically done where the trial judge will exercise discretion on remand regarding

17

the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue. *Id.*

Here, we are remanding for the trial court to exercise discretion and decide whether Westwood's three felony convictions involved the same criminal conduct. The outcome will determine the correct offender score and whether the sentences will run concurrent or partially concurrent. The trial court has not expressed any opinion or prejudice with respect to this issue. If anything, the trial court's initial reluctance to accept the State's *Chenoweth* argument indicates a willingness to impose a concurrent sentence. This is especially clear given the court's comments and the State's acknowledgment that "the burglary and the assault were committed in order to further the attempted rape." RP (Jan. 8, 2018) at 44.

The record shows a conscientious judge who applied the law fairly to Westwood. We have affirmed most of the trial court's rulings. The trial court's statements in its letter are statements based on the record before the trial court. They are not based on any improper prejudice or bias. A reasonably prudent, disinterested observer would conclude that Westwood received a fair trial and a fair sentence, and that he will receive a fair resentencing. Accordingly, we deny Westwood's request for a new sentencing judge.

No. 35792-9-III
*State v. Westwood*

Affirmed in part; remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Korsmo, J.

19

# APPENDIX

No. 35792-9-III
*State v. Westwood*

DAVID G. ESTUDILLO, Judge, Dept. 1
JOHN D. KNODELL, Judge, Dept. 2
JOHN M. ANTOSZ, Judge, Dept. 3
TOM W. MIDDLETON, Court Commissioner

35 C Street NW
P.O. Box 37
Ephrata, WA 98823
(509) 754-2011

CRYSTAL BURNS, Court Administrator
SHAREEN LAUGHLIN, Deputy Court Administrator
LYNETTE HENSON, Jury Administrator
TOM BARTUNEK, Official Reporter

October 30, 2019

Kevin McCrae
Deputy Prosecutor
P.O. Box 37
Ephrata, WA 98823

Robert Kentner
Public Defender
P.O. Box 14
Seattle, WA 98111

RE: **State v. Dahndre Westwood**
    **Grant County Cause No.: 16-1-00352-7**

Dear Counsel:

The Court of Appeals (hereinafter COA) has remanded this case to allow for the possible entry of a plea to a charge which approximates the benefits contemplated by the parties' original agreement and has provided guidance to this Court for the process by which that plea is to be entered. That opinion states that "should Mr. Westwood accept the State's offer and enter a valid plea, then the current counts of conviction must be vacated," (Slip Opinion at 16) and should "Mr. Westwood enter a valid plea to an offer tendered on remand, his current convictions will be vacated." (Slip Opinion at 17)

But it also points out that the "trial court's decision regarding whether to permit dismissal of the remaining counts in the information would turn on CrR 8.3(a)," (Slip Opinion at 10) and at another that this Court because of the unique circumstances of this question was never given the

1

21

opportunity to decide whether dismissal of the remaining counts is appropriate. (Slip Opinion at 13)

The COA's opinion states that any decision "as to whether to dismiss pending counts *or to permit an amended information that effectively dismisses pending* counts turns on an application of CrR 8.3 and CrR 2.1(d)." (Slip Opinion at 13 n.2 ital. added) The State has offered to amend the information against Mr. Westwood to a single count of attempted rape in the second degree and to dismiss all other charges against him if he will plead guilty. Mr. Westwood has rejected this proposed agreement. Mr. Westwood declines to state his reasons for doing so.

This Court believes the offer does approximate the benefits of the original offer to Mr. Westwood. But it is not in a position to say whether this will play in any part in the COA's further disposition of his case. In its opinion, the COA stated that if "Mr. Westwood rejects the State's offer or fails to enter a valid plea, then his existing counts of conviction will remain," subject to appellate review, as discussed below. (Slip Opinion at 16-17) The court allowed the parties to submit supplemental briefing. (Slip Opinion at 18)

But, previously, Mr. Westwood's appellate counsel argued that the COA should reverse his convictions. (Appellant's Brief at 22) This Court does not know what relief counsel will seek in light of most recent developments. In the hopes that it will promote an efficient disposition of Mr. Westwood's appeal, this Court here will address whether the State's original offer satisfied CrR 8.3 or RCW 9.94A.431(1).

CrR 8.3 abrogates the prosecuting attorney's common law discretion to dismiss. 12 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure, sec. 2101 at 449 (3d ed. 2004). The trial court alone is authorized to dismiss a criminal charge. State v. Sonneland, 80 Wash. 2d 343, 346, 494 P.2d 469 (1972). CrR 8.3(a) says that only the trial court may grant a prosecutor's motion to dismiss a charge.[1] The amended information the State proposes effectively dismisses two serious violent felonies. Therefore, CrR 8.3 authorizes this Court to condition dismissal on a finding that it is in the interest of justice.

The SRA also allows a court to reject a plea agreement if that agreement is inconsistent with the interest of justice. RCW 9.94A.431(1). (Slip Opinion at 13) This Court should not have rejected the plea agreement initially proposed as inconsistent with prosecutorial standards under RCW 9.94A.450 because the State articulated a tenable basis justifying it. (Slip Opinion at 16) But this Court has not had the opportunity to apply the correct standard to the State's original proposal. Both the court rules and the Sentencing Reform Act (hereinafter SRA) contemplate judicial evaluation of plea agreements, particularly those which effectively dismiss counts. If by rejecting the State's offer Mr. Westwood waives this Court's error in applying the wrong standard to the plea offer, there is of course no issue. But if Mr. Westwood's counsel seeks some other remedy for the Court's error, further consideration of that proposed agreement under the standards identified by the COA itself not only promotes efficient disposition of this case, but also is

---

[1] When a court rule and procedural statute are inconsistent, the court rule governs. State v. Billie, 132 Wash. 2d 484, 939 P.2d 691 (1997). A rule affecting the means by which the court arrives at a sentencing range is procedural. State v. Ramos, 187 Wash. 2d 420, 387 P.3d 650, cert. denied, 138 S.Ct. 467 (2017).

2

mandated by both rule and statute. This Court's previous misapplication of the law does not justify abrogation of its duty to decide correctly now.

The State's original proposal reduced the Defendant's incarceration time by more than half. Perhaps more importantly, it dramatically reduced his criminal history in the likely event of re-offense. This Court must examine whether the previous plea agreement was in the interest of justice under both CrR 8.3 and RCW 9.94A.431(1).

The phrase "in the interest of justice" has a broad meaning and imports the exercise of discretion which considers both the interests of the defendant and those of society. See United States v. National City Lines, Inc. (DC Cal 1947). In determining whether dismissal is in the interest of justice, this Court will consider not only the proceedings in the adult felony matter but also the proceedings in juvenile court where the State first filed these charges against Mr. Westwood and where the Court held declination proceedings.

The State originally charged the Defendant on February 23, 2015 in juvenile court with 1) attempted rape in the first degree; 2) first degree burglary; and 3) first degree assault-all without enhancements. The State also filed a separate information against the Defendant alleging assault in the second degree. The State amended the first information charging first degree burglary to reduce the assault charge to second degree assault and to add a charge of indecent liberties by forcible compulsion on March 16, 2015. The State did not amend the charges in juvenile court again.

The State submitted a declaration to juvenile court, which described the Defendant's crime in a manner consistent with the proof the State ultimately submitted at trial over two and a half years later: In the early morning hours of December 6, 2012, AMB, a young nursing student at Big Bend Community College, was studying at her home near Moses Lake, Washington. At that time, the Defendant, wearing a dark-colored hoodie, dark-colored gloves and a bandana over his face, entered through a back bedroom window, which was not able to be properly secured. He brandished a six-inch curved knife and asked his victim, "Do you want it the hard way or the easy way?" and "Do you want to quit breathing forever?"

The Defendant forced the victim into her bedroom and forced his hands down her pants. The victim resisted. She told the Defendant her boyfriend would soon return; she faked a medical condition; and she screamed. She fought back vigorously and was able to prevent actual rape. Nevertheless, in the five or ten minutes before he fled, the Defendant punched her in the face about ten times. The victim was able to strike and kick the Defendant. She was also able to remove one of his gloves and scratch him, thereby securing a sample of his DNA under her fingernails.

However, it was only after traffic was audible outside the victim's apartment that the Defendant fled. When Deputy Canterbury of the Grant County Sheriff's Office arrived shortly thereafter, the victim was hysterical, her face swollen and bleeding. Because of the victim's resourcefulness, a nurse at the hospital to which she was taken was able to obtain the Defendant's DNA and the State was able to secure his conviction.

3

On March 9, 2015, the State moved the juvenile court to decline jurisdiction in the Defendant's case. At the declination hearing, the State, represented by Mr. Paul Gaffney, presented evidence and argued that both the first and the second information had prosecutorial merit.

The Grant County Juvenile Department prepared a "Decline Investigation Report." In that report, Mr. Vincent Cardiel noted that the Defendant's attack on December 6, 2012 was part of a "pattern of this type of serious and violent conduct since these types of behaviors began surfacing in 2010 upon Dahndre's first contact with the juvenile department of Grant County."

The report further noted that:

Dahndre was twelve years of age at the time of his first involvement with the juvenile department in Grant County and it is clear that after these offenses occurred, Dahndre did not reduce his criminal activity and in fact, increased the prevalence of his criminal conduct. It is of great concern to the juvenile department and this writer that Dahndre still managed to continue an increased pattern of criminal misconduct after exhausting all interventions offered. This blatant disregard for community safety and societal laws presents an immense risk to society and would not be most appropriately addressed or resolved in the juvenile justice system as previous attempts to provide protection from Dahndre's alleged acts have not been adequate enough through the treatment modalities provided by the juvenile justice system in order to meet the needs of the community for protection from serious harm and the threat there of.[2]

Mr. Gaffney echoed this sentiment in his memorandum to the Court:

Throughout his years in the Moses Lake community, Westwood has demonstrated a lifestyle that demonstrates a certain level of sophistication and maturity. He has had chronic truancy issues, See Exhibit 5, attendance Records from Moses Lake School District, drug use, Case 14-8-00119-1, a conviction for possession of Methamphetamine. Westwood has not attempted to obtain an education or seriously avail himself of treatment services for his drug use. He does not demonstrate a lifestyle that an objective observer would ascribe to a typical youth, he has essentially done what he wants, when he wants and where he wants since the age of 12.[3]

Based on the record before him, Judge David Estudillo granted the State's motion to decline jurisdiction on May 19, 2016. Neither the Appellant nor the Respondent provided a record of the juvenile proceedings involving the Defendant to the Court of Appeals. The State on May

---

[2] A copy is appended as Exhibit A
[3] A copy is appended as Exhibit B.

4

24, 2016 filed adult felony charges against the Defendant involving his actions on December 6, 2012 and in a separate cause the assault he was alleged to have committed on May 28, 2015.[4]

The Court, at the parties' request, then continued the defendant's trial seven times and allowed two amendments of the information. The last, upon which the Defendant went to trial, charged 1) attempted rape in the first degree; 2) burglary in the first degree; 3) assault in the second degree; 4) indecent liberties by forcible compulsion; and 5) assault in the first degree. These charges were significantly more serious than those the Defendant faced when the case was first charged in juvenile court.

On September 18, 2017, the State offered a plea bargain to the Court. Under this bargain, the Defendant would have pled in this case to a single count of indecent liberties by forcible compulsion. In the related case, he would have pled to a single count of assault in the third degree. This would have meant a standard range of 72-96 months, less than half of the range for the charges of which he was convicted. It would also have dramatically lessened his criminal history in the event of future conviction(s).

The prosecution offered the following justification for the first plea bargain:

> Mr. McCrae: The reason the state is looking for this – looking at this plea bargain is Mr. Westwood was 14 at the time. And given the recent case law coming out of our State Supreme Court, we think this is, given the youth, that we have to – we have to now apparently take into consideration, and the fact that Mr. Westwood under this conviction will be under the thumb of the ISRB for the rest of his life, because it is a .507 case, that this is a reasonable plea bargain.
>
> The Court: So you're doing this because you're afraid of the Supreme Court?
>
> Mr. McCrae: Well, I'm doing this because I don't know what the judge is going to do, quite frankly. This is--
>
> The Court: The judge?
>
> Mr. McCrae: Correct. The Supreme Court has--
>
> The Court: Not me?
>
> Mr. McCrae: Well, you or whoever is the trial judge. I don't know who the trial judge will be.

---

[4] On October 2, 2017, the charges arising from the Defendant's alleged assault was called for readiness. After the passage of time and the numerous continuances, the prosecution related that one witness couldn't remember what had happened and after listening to the other's story, the prosecution decided it would be unable to disprove self-defense. The Court granted the State's motion to dismiss that cause.

5

> But the Supreme Court has said that judges now have complete discretion to do what they will when the defendant is under the age of 18. So the court is not bound by standard ranges. The court would not be even – be bound by the life possibility without – or life under the ISRB.
>
> So …
>
> The Court: So you're afraid that one of us, either I or Judge Estudillo or Judge Antosz, is going to be too lenient with the young Mr. Westwood?
>
> Mr. McCrae: That's a possibility. I can't discount it. I don't know.
>
> The Court: That's a kind of sad comment, isn't it?
>
> Mr. McCrae: You know, you don't take my recommendations all the time. I mean that's – I don't mean to be – that's kind of the way it works.
>
> The Court: Well, you have to understand, Mr. McCrae, I mean I have the most profound respect for your judgment in these matter, but I mean I have to – I wouldn't be much of a judge if I didn't sometimes—
>
> Mr. McCrae: Absolutely.
>
> The Court: --wander off the reservation, so to speak.
>
> Mr. McCrae: Absolutely. But that's a risk the state would take by going to trial.

The prosecution did not assert to this Court that because of his youth alone or in the context of all the Defendant's history that he was less culpable for his crimes.[5] The State did not indicate that it had considered any factors other than his youth or balanced any other factors in assessing his culpability. This court rejected the plea bargain solely on the ground that it did not satisfy prosecutorial standards set forth in the SRA.

This matter proceeded to trial on October 11, 2017. The jury convicted the Defendant of every charge except indecent liberties by forcible compulsion. This Court dismissed the second degree assault count on double jeopardy grounds on January 8, 2018. This Court sentenced the Defendant on the remaining counts on January 30, 2018.

The presentence report, which was included in the appellate record but to which the Court of Appeals did not refer, concludes as follows:

---

[5] At sentencing, the State did not argue that once it had articulated a tenable basis for a plea agreement that this Court could reject that agreement only if it were to find that the prosecution had abused its discretion in offering that agreement. It did not suggest that this Court was violating the SRA or the separation of powers doctrine. (Nor did the defense make those arguments.)

6

26

Mr. Westwood boasts about his gang affiliation and the crimes that he is involved in while he is not incarcerated. When questioning Mr. Westwood about his income, Mr. Westwood stated that he got his income from "stealing people's stereos, shoes, phone, selling drugs and jumping people". When I asked Mr. Westwood if any of his friends are involved in criminal activity he stated that they are mostly gang members and that they are "heavily involved in jumping people, robbing people, stealing, and shooting at South Siders in Moses Lake". Mr. Westwood has been involved in criminal activities since the age of 12, with his charges continuing to get more serious.

Defense counsel urged the Court to impose a mitigated sentence because of the Defendant's age. Although this Court had authorized defense counsel to hire a psychologist to help produce a mitigation package, the defense did not produce him or a report at the sentencing hearing. The State made the following argument against mitigation:

State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015) clarified State v. Ha'mim, 82 Wn. App. 139, 916, 2d 971 (1996), aff'd, 132 Wn.2d 834, 940 P.2d 633 (1997). O'Dell held that age alone was not a factor justifying an exceptional sentence, but rather was an evidentiary factor to be considered when determining whether "The Defendant's capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law was significantly impaired." RCW 9.94A.535(1)(e). Notably in O'Dell the court cited testimony from the defendant's mother about his child like behavior. Id. at 697-98.

Here Mr. Westwood presents no evidence akin to that in O'Dell. The letters he presents are not evidence. While the rules of evidence do not formally apply in a sentencing, those letters are not even under oath, not subject to cross examination, and are more akin to attorney's arguments than actual evidence.

Further, in the order on declination in analyzing the sophistication of the juvenile Kent Factor the court specifically found that Mr. Westwood showed a pattern that should not be characterized as typical for juveniles his age, and that factor weighed towards treating Mr. Westwood as an adult. See O'Dell, 183 Wn.2d. at 697. In a declination hearing the State has the burden of proof by a preponderance of evidence. In seeking an exceptional sentence below the standard range the defendant has the burden of proof by a preponderance of evidence. Mr. Westwood has introduced no new evidence since the declination hearing that would show his youthfulness should be a mitigating factor in his crime.

The Court agreed with this argument and sentenced the Defendant within the standard range. The Defendant appealed his conviction and sentence. The Court of Appeals has remanded the matter for further proceedings in accord with the majority opinion.

This Court, of course, accepts the authority of the Court of Appeals in this matter. The Court of Appeals held that this Court failed to give deference to a "tenable justification" for the plea bargain, the Defendant's youth at the time of the commission of the offense. This Court

7

accepts that holding, but regrets that the Court of Appeals did not, as it has in similar cases where the trial court did not apply the right standard, remand for the Court to reconsider in light of the proper rule. See, e.g., State v. Houston-Sconiers, 188 Wash. 2d 1, 391 P.3d 409 (2017).

As noted above, this Court will now conduct the same inquiry it should have when the first plea bargain was offered to the Court: Was the State's original offer, which not only reduced, one charge substantially but also effectively dismisses two other serious violent offenses, in the interest of justice?

This Court failed to recognize that the Defendant's youth although not a statutorily enumerated basis justifying a plea bargain which does not adequately describe the Defendant's criminal conduct should have been considered by this Court. It is well-established that if one is convicted as a minor, the sentencing court must consider that defendant's youth as a potential basis for imposing a mitigated sentence. State v. Houston-Sconiers, 188 Wash. 2d 1, 391 P.3d 409 (2017). The "lack of maturity, vulnerability to peer influences, and impaired executive functioning" which often go with youth, see Miller v. Alabama, 567 U.S. 460, 471, 183 L.Ed. 2d 407, 132 S.Ct. 2455 (2012), may under appropriate circumstances be a reason to believe that a young defendant's criminal activity was the result of immaturity which is likely to pass and that, therefore, a lesser punishment is appropriate.

But that is different from the notion that a defendant's immaturity is a defense to any specific charge. Diminished capacity, for example, like the immaturity associated with youth, may weaken one's resistance to criminal impulses, and may be considered in determining whether one acted with criminal intent. WPIC 18.20. But it is only a defense to a crime if it is so severe as to render the defendant incapable of forming the specific intent required to commit the crime charged. State v. Griffin, 100 Wash. 2d 417, 418, 670 P.2d 265 (1983). Even in those cases where it does reach that level of severity, it is no defense to a crime which does not require specific intent. State v. Swagerty, 60 Wash. App. 830, 810 P.2d 1 (1991).

Children *are* different. They are different from adults *and from each other*. The Defendant in particular was different from other children both at the time he stood trial and when he was fourteen years of age. The State knew when it offered to dismiss three of the class A felonies it had levelled against the Defendant that his crimes were not the product of a passing weakness to resist wrongdoing. They were part of a series of ever more violent and dangerous criminal conduct. As the O'Dell case cited by the State at sentencing recognized, the degree to which the criminal conduct of any given youthful offender should be mitigated must be individually evaluated. A youth not otherwise inclined to crime who is unable because of immaturity to resist something he might otherwise have avoided and is likely to avoid when he acquires maturity does not require lengthy incarceration. See State v. Houston-Sconiers, supra. But the entire record before this Court demonstrates that the Defendant here is not that youthful offender.

Where a defendant asserts that his youth significantly impaired his ability to appreciate the wrongfulness of his conduct or conform to the law but does not rise to the level of a defense, the court is to take that into consideration at sentencing. The prosecution argued at the Defendant's declination hearing that the charges of which the Defendant was convicted here had prosecutorial merit. Judge Estudillo agreed and found that they did. When the prosecution offered the plea

8

bargain, it acknowledged that there were no evidentiary problems which made conviction doubtful. This means that the Defendant was unable to demonstrate that he was incapable of forming any required mental state. The defense did not challenge this assertion.

The prosecution did not make an individual assessment of the Defendant's youth as a mitigating factor to be considered in charging in the full context of the Defendant's entire criminal history when it extended a plea offer to the Defendant. Further, it ignored the full consideration given to the Defendant's youth as a mitigating factor in juvenile court. This Court concludes that if it had, no reasonable prosecutor could have concluded that the Defendant's youth was a justification for dismissing two serious violent felonies the Defendant had committed.

This Court, as does the COA, recognizes the importance of plea bargaining in our system of criminal justice. (Slip Opinion at 5 citing <u>Santobello v. New York</u>, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed. 2d 427(1971)). But that importance should not blind courts to abuses in the plea bargaining process. When the SRA was enacted, the criminal code was much simpler than it is now. Prosecutorial charging discretion was more limited. But since then, the legislature has enacted multiple new, alternative crimes which can be charged in identical circumstances but have significantly different standard ranges. The legislature has also enacted numerous enhancements and aggravators which prosecutors can use to pressure defendants into guilty pleas. (This pressure is greatly enhanced if a defendant is held under bail.) The prosecution's charging latitude is much greater now than when the SRA was enacted. Therefore, the prosecution has greater power to shape a defendant's sentencing range. Its role in the sentencing process has become quasi-judicial to a greater extent.

The legislature addressed this potential problem when its parameters were significantly more limited. The SRA directs prosecutors to file charges which adequately describe the nature of a defendant's conduct but also directs them not to overcharge in order to obtain a guilty plea. RCW 9.94A.411(2)(a)(i). In this Court's experience, the prosecution's violation of this direction is common.

But it did not happen here. The charges upon which the Defendant stood trial adequately described the Defendant's criminal conduct, as the SRA requires. RCW 9.94A.411(2)(i). No one has argued to the contrary. The State has demonstrated over and over again that it does not believe Mr. Westwood's criminal conduct resulted from a youthful inability to resist transient violent urges. It successfully sought declination. After the Defendant's conviction, it successfully argued against a mitigated sentence. The State even now does not contend that Mr. Westwood's moral culpability for his crimes was significantly affected by his age. It argues to the COA that a mitigated sentence was not appropriate and insists that Mr. Westwood be shackled in court.

The State has demonstrated that its primary concern is maintaining its ability to leverage guilty pleas through overcharging. Washington courts have failed to recognize this problem over and over again. <u>See State v, Houston-Sconiers</u>, <u>supra; State v. McFarland</u>, 189 Wash. 2d 47, 399 P.3d 1106 (2017).

The record before the Court demonstrates that Mr. Westwood is a dangerous and violent person. The record further demonstrates that his predisposition to violent criminal behavior will

9

not abate as he ages. In the likely event that Mr. Westwood reoffends, an accurate reflection of his past offenses must be available to a future sentencing court in order to allow it to accurately set his standard range. On the other hand, any injustice resulting to Mr. Westwood can be corrected in the sentencing process. The State's offer would have unjustly distorted the Defendant's criminal history. Mr. Westwood's victim fought him under terrifying circumstances with courage and the presence of mind to collect the DNA evidence which allowed the justice system to find and convict him. The charges against him must not minimize her courage or her suffering. The Court finds that the State's original plea offer to Mr. Westwood was contrary to the interest of justice.

The present offer which Mr. Westwood has rejected may present an additional difficulty which this Court need not address in light of the above conclusions. The State's offer to Mr. Westwood is for him to plead guilty to a crime which is a lesser included crime of a crime of which a jury has already convicted Mr. Westwood: attempted rape in the first degree. The State may not inflict upon a defendant multiple punishments for the same offense. State v. Bobic, 140 Wash. 2d 250, 260, 996 P.2d 610 (2000). But if Mr. Westwood pleads guilty to attempted rape in the second degree before his conviction for attempted rape in the first degree based upon the same criminal conduct has been vacated, that will be the result. Mr. Westwood cannot waive the double jeopardy violation where, as here, it is apparent on the record before the Court. State v. Knight, 162 Wash. 2d 806, 812, 174 P.3d 1167 (2008). The question is whether the violation can be cured by subsequent dismissal of the greater offense contemplated by both parties. This question is moot here.

This Court returns this matter to the Court of Appeals to determine what further relief is appropriate.

Very truly yours,

John D. Knodell
Judge

10

30